## PITTSBURGH PLATE GLASS CO. v. NATIONAL LABOR RELATIONS BOARD.*

No. 521.   Argued March 7, 10, 1941.—Decided April 28, 1941.

.  *Together with No. 523, *Crystal City Glass Workers' Union* v. *National Labor Relations Board*, also on writ of certiorari, 311 U. S. 642, to the Circuit Court of Appeals for the Eighth Circuit.

Mr. J. W. McAfee, with whom Messrs. Leland Hazard and Joseph T. Owens were on the brief, for petitioner in No. 521. Mr. Henry H. Oberschelp for petitioner in No. 523.

Solicitor General Biddle, with whom Messrs. Warner W. Gardner, Robert B. Watts, Laurence A. Knapp, Mortimer B. Wolf, and Owsley Vose were on the brief, for respondent.

MR. JUSTICE REED delivered the opinion of the Court.

The petitioners in the two cases covered by these certioraris [1] are the Pittsburgh Plate Glass Company, an employer, and the Crystal City Glass Workers Union, an "independent" or "local" union, that is a union unaffiliated with any other employee organization. Charged with an unfair labor practice in refusing to bargain collectively with duly accredited representatives of its employees, the Company countered the complaint with the assertion that it had and did bargain collectively with the proper representatives of its employees but that it denied the validity of a Board decision including the Crystal City plant of the Company as a part of the appropriate bargaining unit. The central issue thus is the legality of the Labor Board's decision, under § 9 (b) of the National Labor Relations Act,[2] determining that "the production and maintenance employees of the Company" at all six plants of its flat glass division, as a whole, constitute the appropriate unit for collective bargaining for the Crystal City employees, rather than the employees of the Crystal City plant only. The Board's conclusion is challenged on the merits, on procedural and on constitutional grounds. The certioraris were granted because of the importance of the "appropriate unit" problem in the administration of the Act.

The six plants of the flat glass division are located in five different states: Ford City, Pennsylvania; Creighton, Pennsylvania; Mount Vernon, Ohio; Clarksburg, West Virginia; Henryetta, Oklahoma; and Crystal City,

---

[1] Certioraris granted, 311 U. S. 642.
[2] 49 Stat. 449.

Missouri.[3] The normal number of employees in the whole division is about 6500. The Crystal City plant, with 1600, and the slightly larger plants at Ford City and Creighton account for the bulk of these workers; the remaining three together employ only about 1000. The Federation of Flat Glass Workers, an affiliate of the Congress of Industrial Organization, has a majority of all the employees in the flat glass division and also a majority at each plant except Crystal City. Its position, which the Board sustained, is that the entire division should be a single bargaining unit. The Crystal City Union, which claims a majority at that plant, and the Company both contend that the circumstances of this case require Crystal City to be separated from the rest of the division for the purpose of fixing the unit.

The present proceedings are the third stage of this labor dispute. Originally, in June, 1938, the Board filed a complaint against the Company alleging domination of and interference with the Crystal City Union in violation of §§ 8 (1) and (2).[4] The Crystal City Union was not named as a party in that proceeding. Before any hearing had been held the Company consented to entry of an order that it would cease and desist from dominating or contributing to the Crystal City Union or from recognizing or dealing with it as a labor organization. The Board issued the stipulated order in September, 1938, and later, also pursuant to the stipulation, obtained an enforcement order from the Circuit Court

---

[3] The division also includes two small plants with 65 employees at Kokomo and Elwood, Indiana. The work done at these plants is not similar to that at any of the six referred to, and none of the parties contended that they should be included in the unit. Accordingly, the Board excluded them.

[4] The complaint also alleged certain unlawful discriminations in regard to hire and tenure, and other interferences with the employees' right of self-organization.

of Appeals.[5] The Federation of Flat Glass Workers, which had filed the charges leading to the issuance of the complaint, also had requested an investigation and certification of representatives pursuant to § 9 (c) of the Act. Extensive hearings on this second stage took place in October, 1938, at which the Crystal City Union appeared and participated. On January 13, 1939, the Board issued its decision fixing the bargaining unit and certification of representatives. The Board found that the Company's production and maintenance employees throughout the entire flat glass division (with the exception of window glass cutters, clerical employees not directly connected with production, and supervisory employees) constitute an appropriate unit, and it certified the Federation as the exclusive representative of all the employees in the unit.[6] This order, under our ruling in *American Federation of Labor* v. *Labor Board*,[7] was not subject to direct judicial review under § 10 (f) of the Act. The Company, however, continued to assert that the Crystal City plant should be excluded from the unit, and refused to bargain with the Federation with respect to that group of employees. Accordingly, about a month after its certification order, the Board issued a complaint in this proceeding, the third and pending stage of the labor dispute, alleging a refusal to bargain collectively in violation of §§ 8 (1) and (5). At the hearing on this complaint, at which the Crystal City Union was permitted to intervene, the trial examiner excluded a certain offer of proof by it and the Company. For various reasons the Board found that the exclusion was in part proper and for the rest non-prejudicial. On the merits the Board, with one member dissenting, adhered to its

[5] 102 F. 2d 1004, enforcing 8 N. L. R. B. 1210.

[6] 10 N. L. R. B. 1111.

[7] 308 U. S. 401.

original view that the Crystal City plant should be included in the unit and therefore found that the Company had committed an unfair labor practice.[8] The Company and the Crystal City Union sought review of the Board's decision in the Circuit Court of Appeals, which affirmed,[9] and we brought the case here on certiorari.

To reach a conclusion upon the complaint under consideration against the Company of unfair labor practices, violating § 8, subsections (1) and (5) of the National Labor Relations Act, the validity of the Board's decision as to the appropriate unit must be decided. As the unfair practice charged was the refusal to bargain collectively because of the inclusion of the Crystal City employees in the unit, if they were improperly included the complaint fails.

The Labor Act places upon the Board the responsibility of determining the appropriate group of employees for the bargaining unit. In accordance with this delegation of authority, the Board may decide that all employees of a single employer form the most suitable unit for the selection of collective bargaining representatives, or the Board may decide that the workers in any craft or plant or subdivision thereof are more appropriate.[10] The

---

[8] 15 N. L. R. B. 515.

[9] 113 F. 2d 698.

[10] 49 Stat. 453:

"SEC. 9. (a) Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such pruposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: *Provided,* That any individual employee or a group of employees shall have the right at any time to present grievances to their employer.

"(b) The Board shall decide in each case whether, in order to insure to employees the full benefit of their right to self-organization and to collective bargaining, and otherwise to effectuate the

petitioners' contention that § 9 (a) grants to the majority of employees in a unit appropriate for such purposes the absolute right to bargain collectively through representatives of their own choosing [11] is correct only in the sense that the "appropriate unit" is the one declared by the Board under § 9 (b), not one that might be deemed appropriate under other circumstances. In its Annual Reports, the Board has stated the general considerations which motivate its action:

"In determining whether the employees of one, several, or all plants of an employer, or the employees in all or only a part of a system of communications, transportation, or public utilities, constitute an appropriate unit for the purposes of collective bargaining, the Board has taken into consideration the following factors: (1) the history, extent, and type of organization of the employees; (2) the history of their collective bargaining, including any contracts; (3) the history, extent, and type of organization, and the collective bargaining, of employees of other employers in the same industry; (4) the relationship between any proposed unit or units and the employer's organization, management, and operation of his business, including the geographical location of the various plants or parts of the system; and (5) the skill, wages, working conditions, and work of the employees." [12]

In its hearings on the appropriate unit the Board received evidence as to the organization of the Com-

---

policies of this Act, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof."

[11] § 7.

[12] Fourth Annual Report (1939) 89–90. See also First Annual Report (1936) 112–20; Second Annual Report (1937) 122–40; Third Annual Report (1938) 156–97; Fifth Annual Report (1940) 63–72.

pany, the variety of its business, its distribution of this business into divisions and the location, size and method of operation of its flat glass plants, which composed the flat glass division. The history of collective bargaining in the business was developed. Finally the relation of the several plants of the flat glass division was examined and the characteristics of each plant and their respective employees gone into. From this evidence the Board determined that the production and maintenance employees of the six scattered flat glass plants were the appropriate unit and that the Federation, which had majorities of the employees in all the plants except Crystal City, was the labor representative for purposes of collective bargaining.

The Company and the local union contend that Crystal City's inclusion was erroneous because neither in the hearings on the appropriate unit nor on this unfair labor practice did the Board permit the introduction of material evidence on the question of appropriate units, the exclusion of which was prejudicial to the respondents.

While the ruling of the Board determining the appropriate unit for bargaining is not subject to direct review under the statute, the ruling is subject to challenge when, as here, a complaint of unfair practices is made predicated upon the ruling.[18] Petitioners press that challenge upon the ground (1) that the procedure denied due process of law, (2) that there was no substantial evidence to justify the ruling, and (3) that the authority granted the Board is an unconstitutional delegation of legislative power.

*First.* Petitioners find in the refusal of the Board to admit certain proffered evidence in the unit hearing and

---

[18] *American Federation of Labor* v. *Labor Board,* 308 U. S. 401, 408–411.

in this hearing a denial of due process in that the exclusion was illegal and arbitrary in depriving the parties of a full and fair hearing as guaranteed by the Fifth Amendment. The petitioners sought to adduce the excluded evidence by petition to the Circuit Court of Appeals for an order that the additional evidence be taken by the Board.[14] This was denied.

There is no challenge to the September 22, 1938, order of the Board, subsequently affirmed by the Court,[15] in the original proceeding where the Crystal City Glass Workers Union was not a party. This withdraws the employer's recognition of the Union as the employees' representative "as a labor organization." As the order does not run against the Union, its presence was unnecessary.[16] After such an order the employer may not be compelled by any other agency of the government to perform any acts inconsistent with that order.[17] While it leaves the Union's private rights untouched this order does forbid further dealings by the Company with the Union as labor representative of the employees. *National Licorice Co. v. Labor Board,* 309 U. S. 350, 366.

Acquiescing, for the argument, in the conclusion that selection of the appropriate unit is a function of the Board, petitioners urge that this function must be exercised in the light of properly available evidence. Much may be and was said upon either side of the issue as to whether Crystal City plant or the flat glass division would be the. most efficient collective bargaining unit. Additional evidence might have brought the Board to a

[14] § 10(e) and (f); *Consolidated Edison Co. v. Labor Board,* 305 U. S. 197, 226.

[15] 102 F. 2d 1004.

[16] *Labor Board* v. *Greyhound Lines,* 303 U. S. 261, 271; *National Licorice Co. v. Labor Board,* 309 U. S. 350, 365.

[17] *National Licorice Co.* v. *Labor Board, supra,* 364.

different conclusion.    Hence, urge petitioners, the Board's refusal to permit the introduction of certain evidence before it, either in the hearing on the appropriate unit and certification of representatives or in this present hearing on unfair labor practices predicated upon that determination and certification, is important.  As the Board's conclusion upon the appropriate unit determined that the Federation, the choice of a majority in the selected unit, would be the bargaining representative for all, including the Crystal City employees, we need not give specific consideration to the refusal of the Board to certify the petitioner, the Crystal City Glass Workers Union, as the bargaining representative of those workers.  Certification of the bargaining representative follows the determination of the appropriate unit.  As will presently appear, however, this does not dispose of the admissibility of evidence as to the Crystal City workers' desire to be represented by the Union.  This is a fact which has a bearing on the determination of the appropriate unit.

For the same reason, the availability of a workers' organization for purposes of representation is not in itself decisive in determining the appropriate bargaining unit. Naturally the wishes of employees are a factor in a Board conclusion upon a unit.  They are to be weighed with the similarity of working duties and conditions, the character of the various plants and the anticipated effectiveness of the unit in maintaining industrial peace through collective bargaining.  It can hardly be said that the domination of a labor union by an employer is irrelevant to the question of what unit is appropriate for the choice of labor representative, but certainly it is a collateral matter in that investigation.  It is only a fact to take into consideration.  If the unit chosen has an employer dominated union, the workers may be given an opportunity to choose representatives, free of this infirmity,

and if the union is free of employer influence, it may be chosen as representative. In short, domination pertains directly to representation but influences the choice of a unit only casually.

Turning to the refusal of the Board to admit tendered evidence in this case, there are five instances alleged as error.[18] In the next preceding paragraph we have referred to the first, the desire of 1500 workers out of 1800 in the Crystal City plant to have that plant a bargaining unit and their opposition to Federation representation. This was before the Board. The petition of the Crystal City workers was presented in the hearing on the appropriate unit, was admitted and considered.[19] It is entirely proper for the Board to utilize its knowledge

---

[18] 15 N. L. R. B. at 518.

[19] The petition was admitted after the following colloquy:

"Mr. HOLMES. We certainly object to the introduction of a petition of that kind in evidence, being irrelevant, not proper to show the wishes of the individual employees or members of this claimed Union at Crystal City. It has no place at this hearing, it is not proper evidence.

"Mr. BUCHANAN. We ask for the records.

"Trial Examiner DUDLEY. I will admit the exhibits for such weight as it may have."

In its opinion on the appropriate unit the Board said (10 N. L. R. B. at 1118):

"Moreover, the prior existence of the Crystal City Union for over 3 years, until almost the day of the hearing in this proceeding, to a large degree explains the desire of the 1,300 Crystal City employees for a separate bargaining unit, as expressed in their petition, and such desires may well undergo a radical change as the effect of the termination of the Crystal City Union's function as a labor organization is fully realized by these employees."

In its opinion on the refusal to bargain (15 N. L. R. B. at 523):

"In so far as this evidence can be assumed to show opposition among the Crystal City plant employees to the Federation, the Board's Decision of January 13, 1939, considered such arguments by the respondent and the Crystal City Union. We see no reason to alter our determination there set forth."

of the desires of the workers obtained in the prior unit proceeding, since both petitioners, the employer and the Crystal City Union, were parties to that prior proceeding.[20] The unit proceeding and this complaint on unfair labor practices are really one.[21] Consequently the refusal to admit further evidence of the attitude of the workers is unimportant.

The second offer refused is to produce evidence that the Crystal City Union, contrary to the previous finding of the Board in a distinct proceeding in which the Union was

---

[20] Cf. Final Report of the Attorney General's Committee on Administrative Procedure, p. 70.

[21] 49 Stat. 453, §.9:

"(c) Whenever a question affecting commerce arises concerning the representation of employees, the Board may investigate such controversy and certify to the parties, in writing, the name or names of the representatives that have been designated or selected. In any such investigation, the Board shall provide for an appropriate hearing upon due notice, either in conjunction with a proceeding under section 10 or otherwise, and may take a secret ballot of employees, or utilize any other suitable method to ascertain such representatives.

"(d) Whenever an order of the Board made pursuant to section 10 (c) is based in whole or in part upon facts certified following an investigation pursuant to subsection (c) of this section, and there is a petition for the enforcement or review of such order, such certification and the record of such investigation shall be included in the transcript of the entire record required to be filed under subsections 10 (e) or 10 (f), and thereupon the decree of the court enforcing, modifying, or setting aside in whole or in part the order of the Board shall be made and entered upon the pleadings, testimony, and proceedings set forth in such transcript."

Section 10 (c) sets out the procedure before the Board for the hearing of complaints alleging unfair labor practices by employers. It requires a written record of the hearing. Sections 10 (e) and 10 (f) give the right of judicial enforcement and review of the Board's orders on such complaints to the Circuit Courts of Appeals on petition of the Board or any person aggrieved by the order.

not a party,[22] is free of employer domination. The entry of the order upon stipulation and consent does not detract from its force. *Swift & Co.* v. *United States,* 276 U. S. 311, 327. As previously explained, this question of domination is a collateral issue to the determination of the appropriate unit and we think to refuse to hear again upon a subject this remote from the inquiry was well within the discretion of the Board.[23] On September 22, 1938, the Board issued its cease and desist order directed against "recognizing or dealing with the Union as a labor organization" and on January 13, 1939, its appropriate unit order. The first order is not attacked. It is true that the Board based its refusal to permit this evidence partly on the finality of the original order. But it was of the view that the Crystal City Union had not availed itself of its chance to enter an appearance or voluntarily intervene

---

[22] 8 N. L. R. B. 1210. After stipulation the following excerpts became part of the Board's order:

The Company shall

"1. Cease and desist: .

"(a) From such unfair labor practices as have occurred in the past; . . .

"(h) From in any manner dominating or interfering with the administration of the Crystal City Glass Workers' Union or any other organization of its employees, or contributing aid or support to said organization, or any other labor organization of its employees; from recognizing or dealing with the Crystal City Glass Workers' Union as a labor organization, or any person or group of persons purporting to represent said organization.

"2. Take the following affirmative action which the Board finds will effectuate the policies of the Act:

"(a) Withdraw all recognition from the Crystal City Glass Workers' Union as the representative of the respondent's employees, or any of them, as a labor organization, and notify said organization to that effect; . . ."

[23] *United States* v. *Socony-Vacuum Oil Co.,* 310 U. S. 150, 228; *Tennessee Power Co.* v. *T. V. A.,* 306 U. S. 118, 145.

in that proceeding.[24]   The Board had just barred the Company from dominating the Union and caused it to withdraw recognition from it as an employee labor organization.  At the hearing on the appropriate unit, at which all parties here were represented and took active part, full investigation was made of the relevant criteria to determine the appropriate bargaining unit.  The history of the Federation was appraised, its efforts at division-wide collective bargaining, the opposition of Crystal City employees to the Federation and the characteristics of the various plants.  These are factors which the Board thought determinative of the appropriate unit.  Whether the Union was dominated by the employer or not was not stressed in fixing the unit. Counsel for the Union stated his position at the unit hearing as follows:

"I want to make a statement inasmuch as counsel for the Federation of Flat Glass Workers has made his statement.  Very briefly I want to state the position of the Crystal City Glass Workers' Union.  When the first statement was made by counsel, it was apparent that this proceeding is going to revolve about the Crystal City plant, which is Pittsburgh Plate Glass Company Plant No. 9.  We expect to show on behalf of Plant No. 9 that approximately 1,300 out of the total of 1,600 employees are members of the Crystal City Glass Workers' Union.  We expect to show that with reference to the integration at the plant the conditions are entirely different, they are very different in Crystal City than in any other plant.  We expect to show that there are certain distinct features with reference to the Crystal City plant that do not exist at any other plant.

"We expect to show further that community conditions differ entirely at Crystal City from what they are at any other plant.

---

[24] 15 N. L. R. B. at 519, n. 4.

"We expect to show that the social status, the economic status and the community status in general of the employees who work in the Crystal City plant is entirely different than it is in any other plant of the Pittsburgh Plate Glass Company.

"If we show those things we feel that the proper unit for the Crystal City plant is the plant unit because of the conditions that I have mentioned, and if any other organization with any other unit was recognized at that plant, it would defeat the purpose of the Act."

Each of these points was fully covered by the evidence before the Board on the unit hearing, with the result that the Crystal City Union received a full and complete hearing on every proposition covered by the statement.

The refusal to reconsider the issue of domination in the present unfair labor practice hearing accords, in our view, with the Board's discretionary powers.

The other three instances may be listed in the language of the Board, adopted by petitioners, as follows: (3) that the employees at the Crystal City plant had distinct interests from employees at the Company's other plants; (4) that the Crystal City Union had bargained collectively with the Company for its members until the Company refused to continue such bargaining because of the charges filed against it by the Federation; and (5) that since the stipulation of July 22, 1938, was entered into by the Board, the Company and the Federation, and since the Board's decision of January 13, 1939, the membership of the Crystal City Union had increased.

With respect to item (3), the distinct interests of the Crystal City employees, the Board ruled that in the unit proceeding the Company and the Crystal City Union were given full opportunity to present such evidence, and in the present proceeding neither of them had indicated that the proof sought to be admitted related to evidence unavailable at, discovered since, or not intro-

troduced in, the unit hearing. The full justification for this ruling by the Board becomes clear only after an examination of the record in the unit proceeding, which under § 9(d) of the Act is part of the record here.

The Crystal City Union appeared at the unit proceeding; it participated in the hearings; it called witnesses, and cross-examined those called by the other parties. A great deal of the hearing was taken up by testimony designed to bring out any interests of the Crystal City workers that might be distinct from those of employees at other plants. Thus there was abundant testimony with respect to their racial origins, their agricultural surroundings, their inclination or disinclination to visit cities, their lack of a "union" background, their recreational habits, etc. There was also a thorough canvassing of all the details in which the processes of production and the working conditions at Crystal City diverged from those at the other plants. If the Company or the Crystal City Union desired to relitigate this issue, it was up to them to indicate in some way that the evidence they wished to offer was more than cumulative. Nothing more appearing, a single trial of the issue was enough.

As to (4), collective bargaining by the Crystal City Union, and (5), that Union's growing membership at Crystal City, the Board said:

"Accepting the foregoing offer of proof as correctly stating the facts, nevertheless, in view of the proceedings against the respondent culminating in the court decree of January 14, 1939, negotiations between the respondent and the Crystal City Union cannot be regarded by the Board as evidence of genuine collective bargaining; nor can the Crystal City Union's membership and representation of employees at the Crystal City plant be considered by the Board as expressing the free

choice of the employees at that plant or as establishing the existence of another labor organization, in addition to the Federation, capable of bargaining collectively with the respondent for the employees there." [25]

The fact that the local union had undertaken negotiations with the employer or that it had grown in numbers would be of slight probative value in a proceeding to determine the bargaining unit. The Board might properly say as it did that accepting the offers of proof it would not alter the determination of the appropriate unit.

Further, if we consider all the contentions about exclusion of evidence together instead of separately, we do not find that in the aggregate the evidence excluded could have materially affected the outcome on the "appropriate unit" issue, in the light of the criteria by which the Board determined that issue.

*Second.* Petitioners complain that the record contains no evidence to support certain essential findings. One of these is the finding in regard to the history of collective bargaining. The Board determined that the Federation after 1934 and until 1937 held written labor agreements covering their members in all the plants of the Company, including Crystal City:

"Not until January 20, 1937, did the Company for the first time insist that Crystal City be excluded from the agreement between it and the Federation on the ground that the Federation did not have as members a majority of the employees at this plant. The written agreement signed on that day, at the insistence of the Company, despite the Federation's objections, did not cover the Federation members at Crystal City." [26]

---

[25] 15 N. L. R. B. at 523.
[26] 10 N. L. R. B. at 1117.

The Board thought the evidence justified the conclusion that the Federation had sought and sometimes succeeded in organizing the Company on a "division-wide" basis. An examination of the contracts shows that three were entered into with the Federation between 1934 and 1937, all three of which recognized obligations towards "employees who are members of the Federation of Flat Glass Workers of America." Another granted a five per cent wage increase "in all plate and safety glass plants." This included Crystal City. There was testimony that all plants were covered and testimony by petitioners that the Crystal City plant was not covered. There were certain provisions applicable only where a plant had a local union. There was none at Crystal City. The evidence, we conclude, justifies the Board's finding that contracts were signed on a division-wide basis. Certainly the express exclusion of Crystal City employees in the 1937 contract on the employer's demand shows an endeavor to organize on that basis.

Petitioners find failure of evidence to establish the appropriateness of the division-wide unit. It is true the record shows a substantial degree of local autonomy. Crystal City is a separate industrial unit, not one mechanically integrated into the division. The local superintendent deals with labor grievances, the plant has its own purchasing agent and there is no exchange of employees. On the other hand, labor policies and wages come from the central office in Pittsburgh, there is great similarity in the class of work done. Wages, hours, working conditions, manufacturing processes differ only slightly among the plants. An independent unit at Crystal City, the Board was justified in finding, would frustrate division-wide effort at labor adjustments. It would enable the employer to use the plant there for continuous operation in case of stoppage of labor at the

other plants.[27]   We are of the view that there was ade-quate evidence to support the conclusion that the bargaining unit should be division-wide.

*Third.* Finally petitioners urge that the standards for Board action as to the appropriate unit are inadequate to give a guide to the administrative action and the result is necessarily capricious, arbitrary and an unconstitutional delegation of legislative power.   We find adequate standards to guide the Board's decision.   While the exact limits of the Board's powers or the precise meaning of the terms have not been fully defined, judicially, we know that they lie within the area covered by the words "employer," "plant," and "craft."[28]   The division-wide unit here deemed appropriate is well within these limits.   As a standard, the Board must comply, also, with the requirement that the unit selected must be one to effectuate the policy of the act, the policy of efficient collective bargaining.   Where the policy of an act is so definitely and elab-

---

[27] With reference to the shifting of orders, the head of the Company's flat glass division testified:

"Q. There is some testimony from you about strikes.  I don't know how long.   During that time I think you said these plants were shut down except the Crystal City plant; is that correct?

A. That is right.

Q. And during the time of the strike, did you fill orders from the Crystal City plant that you would normally have filled from the other plants?

A. Yes.

Q. And you found that you could successfully transfer the orders from Creighton and Ford City?

A. There is no difference in the kind of orders they work on. They may be working at times on the same pattern for the same automobile company.

Q. All you would do would be to wire Crystal City or Creighton?

A. Yes."

[28] § 9 (b).  Cf. Fifth Annual Report, N. L. R. B., V, G, 1 to 4 inclusive.

orately stated, this requirement acts as a permitted measure of delegated authority.[29]

*Affirmed.*

MR. JUSTICE STONE:

I think the judgment below should be reversed.

The Board's order, so far as it directs petitioner, the Glass Company, to recognize and bargain with respondent Federation as the representative of the Company's employees at its Crystal City plant, cannot be sustained unless the Board's certification of the Federation as the appropriate bargaining agency for those employees is upheld. I think that both should be set aside because of the Board's failure in those proceedings to afford to petitioner, Crystal City Glass Workers' Union, an "appropriate hearing," and its failure to determine the unfair labor practice issue on the evidence, both of which, to say nothing of constitutional requirements, are commanded by §§ 9 (c) and 10 (c) of the National Labor Relations Act.

The Federation, affiliated with the C. I. O., has organized local unions at each of the Company's six plants except that at Crystal City, whose employees, some 1600 in number, have been organized by the Union. The Company has recognized and bargained with the Federation as the representative of its employees at all except its Crystal City plant. In 1934 it entered into a written contract with the Federation which provided a method of settling grievances of employees at all its

---

[29] Cf. *New York Central Securities Corp.* v. *United States,* 287 U. S. 12, 24–25; *Opp Cotton Mills* v. *Administrator of Wage and Hour Division,* 312 U. S. 126.

Cf. also *Labor Board* v. *Bradford Dyeing Assn.,* 310 U. S. 318, 340; *International Assn. of Machinists* v. *Labor Board,* 311 U. S. 72; *American Federation of Labor* v. *Labor Board,* 308 U. S. 401. Section 9 (b) is treated as valid in these cases.

plants, through local unions of the Federation. These provisions were renewed in 1935 but as the efforts of the Federation to organize a local union at Crystal City, begun in 1933 and continued actively during 1937 and since, have never succeeded, those provisions have remained inoperative at Crystal City. The renewal contract with the Federation in 1937, which is still in force, does not include the Crystal City plant.

The Union was incorporated in 1938. In April it organized the employees at the Crystal City plant and in the following month the Board, on petition of the Federation, instituted the certification proceeding now before us. In June of that year the Board issued its complaint, charging the Company with unfair labor practices, specifically alleging that it had "dominated and interfered with the formation and administration" of the Union. The Company answered denying the allegation. The Union was not a party to the proceeding and so far as appears had no knowledge of it. The Board, without taking any evidence and without making any finding of an unfair labor practice, which is prerequisite to an order under § 10 (c), made its order, on consent of the Company, directing it to cease and desist from "in any manner dominating or interfering with the administration" of the Union, or "contributing aid or support" to it and "from recognizing or dealing with it." The usual provision disestablishing the Union was omitted from the order.

As soon as the Board had made this order it proceeded with hearings in the certification proceeding in which both the Federation and the Union participated and in which the Board certified the Federation as the appropriate bargaining agency for the employees in all six of the Company's plants.

Upon the refusal of the Company to recognize the Federation as the agent of its employees at Crystal City,

the Board, on complaint of the Federation, began the present unfair labor practice proceeding against the Company. An agreement was then entered into between the Company and the Federation that the existing bargaining contract with the Federation, which did not include Crystal City, should remain in force pending a final determination of the appropriate bargaining unit for Crystal City.

In the present unfair labor practice proceeding the Board reconsidered and heard evidence on the question of the appropriate unit. In the course of the hearings both the Union and the Company offered to prove: (1) that 1500 out of the 1800 employees at Crystal City belonged to the Union and that these members were opposed to being represented by the Federation; (2) that the Union was not dominated by nor had its formation or administration been interfered with by the Company and that the Company had not contributed to its financial or other support; (3) that the employees at Crystal City had distinct interests from those at the other plants of the Company; (4) that the representatives of the Union had bargained collectively for its members with the Company until the Company declined to continue such bargaining by reason of the consent order of September, 1938, which the Board had entered against it, to which order and proceedings leading to it the Union was not a party; and (5) that since the order was made and since the certification of the Federation as the representative for collective bargaining of all the employees the membership in the Union had increased.

All of these offers were rejected and the proffered evidence was excluded. The Board reaffirmed its finding in the certification proceeding that the Federation was the appropriate bargaining agency and made its order directing the Company to bargain with the Federation.

One member of the Board, Mr. Leiserson, dissented, on the ground that the Board's decision was based upon an assumption that the Crystal City employees were incapable of making a free choice of representatives and that the Board's order imposed on the employees at that plant a representative not of their own choosing without any opportunity to express their own choice as to representation, and that it disregarded the history of the bargaining by the Company with the employees at the Crystal City plant and its existing contract with the Federation which excluded the Crystal City plant from its operation.

Throughout the certification and the later unfair labor practice proceedings the Board took the position that the Union and the Glass Company, because of the consent order against the Company, were no longer free to urge the wishes of the Union members as to representation or to show the actual bargaining relation between the Union and the Company or that the Company did not in fact dominate the Union. In the certification proceeding the Board stated that the Union, by reason of the consent order, had "ceased to be able to function as a labor organization and its existence as such at Crystal City then terminated" and that "Since the Crystal City Union can no longer function as a labor organization, its wishes are immaterial."

In reviewing the evidence in the unfair labor practice proceeding the Board adhered to its view that the Union by reason of the consent order must be treated by it as dominated by the Company and that for that reason the proffered and rejected evidence on this point was without weight, and that accordingly it must be taken that there never had been a "genuine and legitimate attempt by the Crystal City employees to bargain with the Company separately from the other plants."

A substantial part of the Board's findings in both proceedings is devoted to the inferences justifying its conclusion as to the appropriate unit, which it drew from this so-called finding of domination derived wholly from the consent order. It found that the wishes of the Union were immaterial since, under the order, it could no longer function as a labor organization. It stated that the existence of the Union for more than three years "to a large degree explains the desire of the 1300 Crystal City employees for a separate bargaining unit, as expressed in their petition, and such desires may well undergo a radical change as the effect of the termination of the Crystal City Union's function as a labor organization is fully realized by those employees."

In addition the Board thought that the evidence of negotiations between the Company and the Union, could not be "evidence of genuine collective bargaining"; it found that the membership of the large majority of the Crystal City employees in the Union cannot be considered "as expressing the free choice of the employees at that plant or as establishing the existence of another labor organization, in addition to the Federation, capable of bargaining with the respondent [company] for the employees there"; and it declared that one of the factors leading to the conclusion "that the interests of all the employees of the various plants are interwoven and that collective bargaining for all the employees involved can most effectively be achieved through the establishment of a single bargaining unit," was "the fact that the membership of the Crystal City Union is coerced and not voluntary." Thus on the questions as to the desires of the employees in each of the six plants and the history of collective bargaining there—both factors which the Board has uniformly considered heretofore in determining the probable effectiveness of future bargaining on the basis of a unit claimed to be appropriate—the Board

has not only rejected proffered evidence, admittedly relevant,. but has drawn conclusions contrary to the rejected evidence, from facts found by the Board to be true, only by treating the conflicting evidence tendered by the Union as without weight.

In order to appraise the issues in the several proceedings before the Board and its action taken with respect to them, it is necessary to consider the function which the Board was called on to perform both in the certification proceedings and the unfair labor practice proceeding, both of which are now before us for review as provided by § 9 (d) of the Act. Section 9 (a) provides that representatives "designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive bargaining representatives of all the employees in such unit for the purposes of collective bargaining." And under § 9 (b) it is the duty of the Board to "decide in each case whether, in order to insure to employees the full benefit of their right to self-organization and to collective bargaining, and otherwise to effectuate the policies of this Act, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof." The policies of the Act which the Board is to effectuate by its choice of the proper bargaining unit, are declared by § 1 to be the mitigation and elimination of obstructions to interstate commerce resulting from labor disputes "by encouraging the practice and procedure of collective bargaining and by protecting the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing," for purposes of collective bargaining "or other mutual aid or protection."

It will be observed that the function assigned to the Board is not the choice of the labor organization to rep-

resent a bargaining unit, for that is to be the free choice of the majority of the employees in some defined group of employees which the Board finds to constitute the appropriate unit. In making the choice of the unit, whether composed of the employees of a plant, a craft, or of an employer, the Board is required to observe the standards prescribed by the Act, which are "to insure to employees the full benefit of their right to self-organization and to collective bargaining" and to protect "the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing."

These are obviously the standards to be applied in a certification proceeding under § 9 (c) which provides that when a question arises "concerning the representation of employees, the Board may investigate such controversy and certify to the parties, in writing, the name or names of the representatives that have been designated or selected. In any such investigation, the Board shall provide for appropriate hearing upon due notice, either in conjunction with a proceeding under section 10 [complaints for unfair labor practices] or otherwise and may take a secret ballot of employees or utilize any other suitable method to ascertain such representatives." A similar requirement is imposed on the Board upon complaint of unfair labor practices.

It is evident therefore that in the present proceeding the Board could not find the Company guilty of an unfair labor practice unless it had refused to bargain with the representative of an appropriate unit, which in turn required the Board to find from relevant evidence which it was required to hear whether the employees of the Crystal City plant constituted such a unit. In making that determination the Board considered, as it could under § 9 (d), the certification proceeding, but it was not required to and did not confine its consideration to

that proceeding. It heard evidence by numerous witnesses bearing on the question of the appropriate unit. It was bound to receive and consider all the evidence relevant to that issue, which was whether the policies of the Act would be better effectuated and whether the right of all of the Company's employees to self-organization would be fully secured by certifying a unit comprising all the employees of the six plants, or two units, one composed of the Crystal City employees and the other the employees in the five plants where the Federation admittedly had a majority.

The Board has always hitherto weighed the desires of the employees in determining the appropriate unit. And here the Board concedes that the Crystal City employees strongly preferred to be represented by the Union. In refusing to attribute any weight to this fact the Board found that their choice was not free, since it considered that the Union, because of the consent order, was company dominated. Whether the Union and the employees were in fact dominated by the employer, and the nature of the bargaining relations with the employer, were thus crucial issues in the case to be determined on evidence. And we are confronted with the extraordinary fact that the Board has determined those issues without ever having heard any evidence on the subject either in the present or the two earlier proceedings.

The present wishes of the employees, their freedom in self-organization from the domination and interference of the employer, their past bargaining relations with the employer, were all admittedly relevant considerations. Even though the Board could have refused to hear the evidence offered as to the wishes of the Crystal City employees and as to the prior bargaining history there, on the ground that, if true, the greater effectiveness of employee bargaining through a division-wide representative and the common interests of the em-

ployees in the six plants warranted the selection of the employees in the six plants as the appropriate unit, it did not attempt to do so. Instead, it rejected the evidence proffered by the Union not on technical or procedural grounds, nor because it thought these circumstances immaterial, or insufficient to change its determination, but on the sole ground that the Union was company dominated and "had ceased to function" by reason of the Board's order directing the Company not to bargain with it. It did this without having found in the present or in either of the earlier proceedings that the Union had ever been dominated or interfered with by the Company, and without having made any order running against the Union or purporting to bind it. The position of the Board thus seems to be that the right of the Crystal City employees to act as a unit, and the right of the Union to represent them in proceedings for ascertaining the appropriate bargaining unit and in collective bargaining with the employer, were forever foreclosed in a proceeding in which they were not represented, to which the Union was not a party, in which no evidence was received or finding made of any unfair labor practice, and which resulted only in an order on consent of the employer which did not purport to control the Crystal City employees or the Union, or determine their rights.

The only support which the opinion of the Court affords for a result so extraordinary is an intimation that the Crystal City employees and the Union had forfeited their right to have the proffered evidence considered by the Board because the Union had failed to intervene in the first proceeding in which the Board made its consent order against the Company, and because in the opinion of the Court the excluded evidence, if considered, would not have materially affected the outcome.

As the opinion of the Court itself points out, the first order of the Board did not run against or purport to bind the Union, see *Labor Board* v. *Pennsylvania Greyhound Lines,* 303 U. S. 261; and as this Court has decided the Board is without authority under the provisions of the Act, to say nothing of constitutional limitations, to make any order determining the rights of a labor organization in a proceeding to which it is not made a party. It was because the Board purported thus to determine the rights of an absent party which had failed to intervene, that we modified its order in *National Licorice Co.* v. *Labor Board,* 309 U. S. 350, 362, 367. It is new doctrine in the law, that one who is not a necessary party to a proceeding in which no order is made against him, nevertheless in some way and on some undisclosed theory, forfeits his rights if he does not voluntarily become a party. At the present term of Court we have had occasion to reaffirm the long recognized principle that a judgment of a court which purports to bind parties not present or represented in the litigation is without efficacy to bind them because if given such effect the judgment would be a denial of due process. *Hansberry* v. *Lee,* 311 U. S. 32. The order of an administrative board can have no greater force.

There is no provision of the statute providing for notice or other procedure on the basis of which the rights of absent parties are to be foreclosed, and in the present case it does not even appear that the Union or the Crystal City employees were notified or were otherwise aware of the proceeding in which the order was made on consent of the employer, which it is now asserted operated to terminate the existence of the Union and for that reason forfeited its right and the right of the employees to have relevant evidence considered in a representation proceeding.

The suggestion that an appropriate hearing upon evidence may be dispensed with because the rejected evidence would not have materially affected the outcome, seems to be based either on the assumption that the Board has in some way passed on the weight of the rejected evidence without hearing it, or that the Court is now free to appraise it and perform the function which the Board neglected to perform. Neither position is tenable. The Board refused to consider any of the proffered evidence on the sole and erroneous ground that the Union and the Crystal City employees had lost the status which they otherwise would have had entitling them to have their wishes and their relations with the employer considered in a representation proceeding. We have no warrant for saying that the Board would have attributed less weight to these factors than to others favorable to the Federation which it did consider, or that if it had thought that it was free to consider them the outcome would have been the same, or that in any case, on review of the Board's order, the interested parties would not have been entitled to urge that the Board, upon consideration of all the evidence, had not properly exercised its discretion.

As we are often reminded, most of the decisions of the Board involve discretion which is to be exercised by it alone and not the courts. For that reason the only substantial right of the litigant before the Board is, in most cases, the right to invoke the exercise of that discretion upon a full and fair consideration of all the relevant evidence. That right the Board has denied to petitioners in this case by refusing to consider the evidence upon palpably erroneous grounds. We are no more free in this case to pass upon the weight and sufficiency of the evidence, with the details of which, like the Board, we are unacquainted, than in any other case in which the Board is required to receive and pass upon evidence.

One of the most important safeguards of the rights of litigants and the minimal constitutional requirement, in proceedings before an administrative agency vested with discretion, is that it cannot rightly exclude from consideration facts and circumstances relevant to its inquiry which upon due consideration may be of persuasive weight in the exercise of its discretion. *Interstate Commerce Commission* v. *Chicago, R. I. & P. Ry. Co.*, 218 U. S. 88, 102; *St. Joseph Stock Yards Co.* v. *United States*, 298 U. S. 38, 75, 78; *Ohio Bell Telephone Co.* v. *Commission*, 301 U. S. 292, 304, 305.

The CHIEF JUSTICE and MR. JUSTICE ROBERTS concur in this opinion.