## NATIONAL LABOR RELATIONS BOARD
### v. GRAHAM et al.
### No. 11267.

Circuit Court of Appeals, Ninth Circuit.

Feb. 13, 1947.

Gerhard P. Van Arkel, Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, and Ida Klaus and Reeves R. Hilton, Attys., NLRB, all of Washington, D. C., and Daniel R. Dimick, Regional Atty., NLRB, of Seattle, Wash., for petitioner.

Hardin, Rank, Meltzer & Fletcher, of Oakland, Cal., and Bernard B. Stimmel, of San Francisco, Cal., for respondents W. C. and Agnes Graham.

Charles J. Janigian and Charles P. Scully, both of San Francisco, Cal., for Bay Cities Metal Trades Council.

Before DENMAN, HEALY. and BONE, Circuit Judges.

HEALY, Circuit Judge.

This matter is before us on petition for the enforcement of an order of the National Labor Relations Board.

Respondents operated a ship-repair yard at Oakland, California. This yard had been built early in 1943 by a concern referred to in the record as Judson. When Judson commenced operations it signed with Bay Cities Metal Trades Council (hereinafter referred to as the Council) a master contract which had been in force since 1940 between the Council and the ship-repair yards in the area. Under the closed shop provisions of this contract Judson secured all its craftsmen, except machinists, through the Council. At the same time Judson signed the standard ship-repair agreement with Local 1304 of the East Bay Union of Machinists (herein called the Union), which agreement had been in effect for several years between the Union and the repair yards in the area, covering machinists only. In compliance with the closed shop provisions of the latter agreement Judson obtained all its machinists through the Union.

Late in 1944 Judson disposed of the yard to another who in turn shortly leased it to respondents. Although respondents did not assume the agreements which Judson had with the Council and the Union, they knew of their existence. Upon taking possession of the yard on January 1, 1945, respondents, through their labor relations director, Lehaney, investigated the pattern of bargaining at the other repair yards in the area and found that the uniform practice was the same as that pursued by Judson, namely, to obtain all machinists through the Union and all other craftsmen through the Council. Lehaney met with a Council representative and signed a memorandum accepting the Council's master contract. A representative of the Union then asked Lehaney to have respondents sign the standard contract for the machinists, but the request, though taken under advisement, was ultimately rejected on the ground that respondents had already entered into a contract with the Council covering the machinists. Nevertheless respondents, who had from the inception of

their operations hired their machinists through the Union, continued to follow that practice until the Council threatened to force a closing of the yard. Yielding to the threat respondents discharged all their machinists, fourteen in number, all members of the Union, and refused to reinstate them, saying that the matter should be referred to "some appropriate government agency." The Union thereupon filed with the Board charges of refusal to bargain and discriminatory discharge.

In its decision of the case the Board stressed the fact that at all times since 1936 the machinists employed in the ship-repair yards located in Alameda County bargained separately and apart from other production and maintenance employees. This circumstance, plus the fact that respondents neither contemplated nor effected any substantial changes in the nature or personnel of the business conducted by their predecessors, and the fact that the machinists had not changed their affiliation and the respondents had no reason to believe that any change in affiliation had occurred or would occur, induced the conclusion that a unit composed of all production and maintenance employees, including machinists, was inappropriate within the meaning of § 9 of the National Labor Relations Act, 29 U.S.C.A. § 159. Whatever majority the Council may have had in such an overall-unit, said the Board, it admittedly had none within a machinists' unit standing alone. The Board agreed with its trial examiner that the closed shop contract between respondents and the Council was not intended by the parties to cover machinists; but assuming the contrary to be the case it nevertheless found that, since the unit was inappropriate, the contract failed to satisfy the proviso to § 8(3) of the Act, 29 U.S.C.A. § 158(3).

The Board concluded that there was a wrongful refusal to bargain collectively with the Union, and that the individual machinists were discriminated against in respect of their hire and tenure of employment. It ordered respondents to desist from these practices, to cease giving effect to their closed shop contract with the Council, insofar as it affects machinists, and ordered them to bargain collectively with the Union for the machinists, to reinstate the discharged machinists with back pay, and to post the usual notices.

The findings are substantially supported by the evidence, and the decision in respect of the appropriate bargaining unit for machinists is well within the discretion lodged with the Board, Pittsburgh Glass Co. v. N.L.R.B., 313 U.S. 146, 163-165, 61 S.Ct. 908, 85 L.Ed. 1251; N.L.R.B. v. Hearst Publications, Inc., 322 U.S. 111, 134, 64 S.Ct. 851, 88 L.Ed. 1170. Acccordingly a decree will be entered enforcing the Board's order in harmony with the petition.