ANTONIO QUIÑONES BIRD, ETC., ET AL., Petitioners, *v.* PUERTO RICO LABOR RELATIONS BOARD, Respondent.

No. 10.    Argued February 1, 1949.—Decided February 24, 1949.

*Víctor Gutiérrez Franqui* for petitioners. *Vicente Géigel Polanco, Attorney General, (Luis Negrón Fernández, former Attorney ·General* on the brief), *A. Torres Braschi, Assistant. Attorney General,* and *Yamil Galib Frangie, Assistant Special Attorney General,* for respondent.

MR. JUSTICE SNYDER delivered the opinion of the Court.

The Puerto Rico Labor Relations Board issued a complaint against the Communications Authority alleging, among other things, that the Authority had engaged in unfair labor practices in that it had dominated and interfered with a labor organization, the Sindicato de Empleados de Comunicaciones de Puerto Rico, and had given financial and other assistance to the Sindicato, in violation of § 8(1) (a) (b) (c) of the Labor Relations Act of Puerto Rico.[1] The complaint was issued as a result of charges filed with the Board by an employee of the Authority who was acting on behalf of the Comité de Defensa de la Cohesión de los Miem-

---

[1] These provisions are found in Act No. 6, Laws of Puerto Rico, 1946, reading as follows:

"Section 8.—*What are Unfair Labor Practices.*—(1) It shall be an unfair labor practice for an employer acting individually or in concert with others:

"(a) To interfere with, restrain or exercise coercion upon, or to attempt to interfere with, restrain or exercise coercion upon his employees in the exercise of the rights guaranteed in Section 4 of this Act.

"(b) To initiate, create, establish, dominate, interfere with or attempt to initiate, create, establish, dominate or interfere with the formation or administration of any labor organization, or to contribute financial or other support to the same; *Provided,* That an employer shall not be prohibited from deducting any sum of money from the salary, earnings or income of an employee for the payment of dues to a labor organization when such deduction is required by the terms of a collective bargaining

bros del Sindicato de Comunicaciones de Puerto Rico. The Board served the Authority, the Sindicato and the Comité with copies of the complaint and notices of hearing.

The Sindicato filed a motion for permission to intervene in the case. The Board entered an order reciting that "the said labor organization having been mentioned in the complaint and notified thereof, as well as of the notices of hearing issued in this case, it acquired the status of an interested party in this proceeding, without having to file a motion for intervention in order to intervene". The order pointed out that participation of the Sindicato "is limited, however, to allege and to prove that it esteems pertinent in relation with the allegations of the complaint, which if proved might serve as the basis of a decision and order of the Board affecting directly or indirectly the rights of the Sindicato".

A hearing on the complaint was begun before an Examiner of the Board, but was suspended to give the parties an opportunity to reach an agreement. The Authority, the Comité and the attorney for the Board filed a stipulation which was submitted in evidence over the objection of the Sindicato. The Examiner submitted the case to the Board, which entered a Decision and Order directed against the Authority in the identical language provided in the stipulation.

The Sindicato filed this petition for review of the order of the Board. The only error assigned is the action of the

contract entered into between the employer and a labor organization not established, maintained or supported by any action defined in this Act as an unfair labor practice, if such labor organization represents a majority of his employees as provided for by Section 5(1) of this Act in an appropriate unit covered by such contract.

"(c) To encourage, discourage or attempt to encourage or discourage membership in any labor organization by discrimination in regard to hiring, firing, or in connection with the tenure or other terms or conditions of employment, including a lockout; *Provided,* That nothing herein contained prohibits an employer from making an all-union shop contract or a maintenance of membership agreement with any labor organization that has not been established, maintained or assisted by any action defined in this Act as an unfair labor practice, if such labor organization represents a majority of the employees in an appropriate unit with authority for collective bargaining."

Board in entering an order based on a stipulation which the Sindicato did not sign.

■■ A company union is not a necessary party in a proceeding of this nature. "As the order did not run against the Association [the company union] it is not entitled to notice and hearing. Its presence was not necessary in order to enable the Board to determine whether respondents [the employer] had violated the statute or to make an appropriate order against them." *Labor Bd.* v. *Greyhound Lines*, 303 U.S. 261, 271; *Solvay Process Co.* v. *National Labor Relations Board*, 117 F.(2) 83 (C.C.A. 5, 1941).

The Supreme Court has pointed out why the company union is not a necessary party in such a proceeding in *Nat. Licorice Co.* v. *Labor Board*, 309 U.S. 350, 362–5:

"The proceeding authorized to be taken by the Board under the National Labor Relations Act is not for the adjudication of private rights. . . . It has few of the indicia of a private litigation and makes no requirement for the presence in it of any private party other than the employer charged with an unfair labor practice. The Board acts in a public capacity to give effect to the declared public policy of the Act. . .

"In a proceeding so narrowly restricted to the protection and enforcement of public rights, there is little scope or need for the traditional rules governing the joinder of parties in litigation determining private rights. Ordinarily where the rights involved in litigation arise upon a contract, courts refuse to adjudicate the rights of some of the parties to the contract if the others are not before it. . .

" .     .     .     .     .     .     .     .     .

"Here the right asserted by the Board is not one arising upon or derived from the contracts between petitioner and its employees. The Board asserts a public right vested in it as a public body, charged in the public interest with the duty of preventing unfair labor practices. The public right and the duty extend not only to the prevention of unfair labor practices by the employer in the future, but to the prevention of his enjoyment of any advantage which he has gained by violation of the Act, whether it be a company union or an unlawful contract with employees, as the means of defeating the statutory po-

licy and purpose. Obviously employers cannot set at naught the National Labor Relations Act by inducing their workmen to agree not to demand performance of the duties which it imposes. . .

"The Board's order runs only against petitioner. . .

"The effect of the Board's order, as we construe it, is to preclude the petitioner from taking any benefit of the contracts which were procured through violation of the Act and which are themselves continuing means of violating it, and from carrying out any of the contract provisions, the effect of which would be to infringe the rights guaranteed by the National Labor Relations Act. It does not foreclose the employees from taking any action to secure an adjudication upon the contracts, nor prejudge their rights in the event of such adjudication. We do not now consider their nature and extent. It is sufficient to say here that it will not be open to any tribunal to compel the employer to perform the acts, which, even though he has bound himself by contract to do them, would violate the Board's order or be inconsistent with any part of it. Section 10(a) and (c) of the Act commits to the Board the exclusive power to decide whether unfair labor practices have been committed and to determine the action the employer must take to remove or avoid the consequences of his unfair labor practice."

The Supreme Court repeated this view in *Pittsburgh Glass Co.* v. *Board*, 313 U.S. 146, where it said that the order of the Board (p. 155) ". . . withdraws the employer's recognition of the Union as the employees' representative 'as a labor organization.' As the order does not run against the Union, its presence was unnecessary. After such an order the employer may not be compelled by any other agency of the government to perform any acts inconsistent with that order. While it leaves the Union's private rights untouched this order does forbid further dealings by the Company with the Union as labor representative of the employees. *National Licorice Co.* v. *Labor Board*, 309 U.S. 350, 366." [2]

The Board could therefore have proceeded against the Authority without making the Sindicato a party. Instead,

---

[2] For a different situation, cf. *Edison Co.* v. *Labor Board*, 305 U.S. 197, 233.

although not required to do so, it made the Sindicato a party for a limited purpose; it would be heard insofar as its rights might be affected. Therefore, the only question before us is whether the order of the Board affects the rights of the Sindicato.

■ The only case cited by the Sindicato in support of its position is *In the Matter of Joliet Wrought Washer Company*, 15 N.L.R.B. 1096. But all that case holds is that the Board will confine its order to such provisions based on a similar stipulation as do not involve rights of the alleged company union. However, the brief of the Sindicato points to no rights of the Sindicato allegedly affected by the order of the Board in this case. It asserts only that it "refused to sign the stipulation because it understood that it prejudiced its rights, particularly Paragraph VII, sub-paragraphs 1(a) to 1(e) inclusive." When we examine these provisions of paragraph VII,[3] we find that they merely apply existing law. Each of the acts prohibited therein is prohibited by

[3] They were incorporated in the order as

"1. To cease and refrain from:

"(a) Permitting the Sindicato de Empleados de Comunicaciones de Puerto Rico or any other labor organization and/or its members to utilize its telegraph and telephone lines and radio communications service to send, free of charge, messages related to union or any other kind of activity.

"(b) Authorizing any of its employees to engage in activities in connection with the Sindicato de Empleados de Comunicaciones de Puerto Rico or with any other labor organization during regular working hours and/or at the places of work or property of the respondent.

"(c) Granting remuneration of any kind for services not rendered to any employee or because said employee is the president, manager, or member of the Sindicato, or any other labor organization, as well as to any other relative of said president, manager or member.

"(d) Purchasing advertising space in the newspaper 'Comunicaciones' edited by the Sindicato de Empleados de Comunicaciones de Puerto Rico or any other newspaper edited by any labor organization of its employees, but mainly for the information of said employees.

"(e) Reducing or in any other way readjusting the working hours of its employees in order to facilitate their participation in activities of the Sindicato de Empleados de Comunicaciones or of any other labor organization, except in those cases where it is expressly ordered or requested by the Puerto Rico Labor Relations Board or any duly authorized officer thereof."

our own statute.[4]   The Sindicato can of course have no rights which conflicts with the public policies laid down in the Labor Relations Act.   We fail to see how restatement of some of the provisions of the statute in an order of the Board directed solely to the employer affects the rights of the Sindicato.

The petition of the Sindicato for review of the Decision and Order of the Board will be dismissed.

Mr. Justice Negrón Fernández did not participate herein.

---

[4] See *Labor Board* v. *Bradford Dyeing Assn.*, 310 U.S. 318; *National Labor Relations Bd.* v. *Moore-Lowry F. M. Co.*, 122 F.(2) 419; *National Labor Relations Board* v. *Reynolds Wire Co.*, 121 F.(2) 627; *In the Matter of Newport News Shipbuilding and Dry Dock Co.*, 48 N.L.R.B. 312; *In the Matter of Titan Metal Manufacturing Company and Federal Labor Union No. 19981*, 5 N.L.R.B. 577; *In the Matter of Laird, Schaber Company, Incorporated*, 14 N.L.R.B. 1152; *In the Matter of Iowa Packing Company et al.*, 11 N.L.R.B. 986; *In the Matter of Servel, Inc., et al.*, 11 N.L.R.B. 1295; *In the Matter of Diamond T Motor Car Company*, 18 N.L.R.B. 204; *In the Matter of Shell Oil Company of California et al.*, 2 N.L.R.B. 835; *National Labor Relations Board* v. *Baltimore T. Co.*, 140 F.(2) 51; *National Labor Rel. Board* v. *Germain Seed & Plant Co.*, 134 F.(2) 94.