**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LOUISVILLE GAS & ELECTRIC COMPANY, Respondent.**

Nos. 84–5272, 84–5306.

United States Court of Appeals, Sixth Circuit.

Decided April 17, 1985.

Argued March 7, 1985.

Elliott Moore, Ann Jones, argued, Deputy Associate Gen. Counsel, Marjorie S. Gofreed, Washington, D.C., Emil C. Farkas, Region 9, N.L.R.B., Cincinnati, Ohio, for petitioner.

Matthew R. Westfall, Baird, Kirven, Westfall & Talbott, Raymond C. Haley, III, argued, Louisville, Ky., for respondent.

Before MERRITT and CONTIE, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

MERRITT, Circuit Judge.

The Board applies under § 10(e) of the National Labor Relations Act, 29 U.S.C. § 160(e) for enforcement of an unfair labor practice order issued by it against Louisville Gas and Electric Company. The Board found that the Company violated sections 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5) and (1), by refusing to bargain with International Brotherhood of Electrical Workers as the certified bargaining representative of a unit clarified to include three workers in a newly-created position. We hold that the Board correctly characterized the three workers as non-managerial employees and therefore grant enforcement of the Board's order.

## I.

Louisville Gas and Electric is a public utility engaged in the generation, transmission, distribution and sale of gas, electricity and related products. Since 1977, substantial record keeping and reporting obligations have been imposed on the Company by the Clean Air Act, 42 U.S.C. § 7401 et seq. and the Clean Water Act, 33 U.S.C. § 1251 et seq. Information required by regulatory agencies pursuant to the above legislation was, and is now, collected by both bargaining unit and supervisory employees assigned to plant operating groups. During the first five years of the monitoring and reporting process, bargaining unit clerical workers (represented by the Union) were responsible for the transposition of the rough data into report form. During this period the engineering staff had ultimate responsibility for the accuracy of reports, for directing remedial efforts and for interpreting agency permits.

On November 1, 1982, the Company created the position of "data records analyst" for monitoring company pollution, implementing remedial programs, interpreting agency permits, and communicating with regulatory agencies relative to possible environmental violations. The three data records analysts were promoted from the ranks of the bargaining unit clericals. One was a records coordinator; the other two were supervisor's assistants. Prior to their promotion, these workers spent 50% of their time doing miscellaneous clerical work—xeroxing, typing, filing and phone work. After their promotions, these miscellaneous duties were dropped and they assumed the monitoring and directing functions formerly performed by the engineering staff.

When the Union learned of the promotions, it filed a unit clarification petition with the Board's regional office requesting the inclusion of the newly-created data records analyst positions. The Company opposed the petition on the grounds that the analysts were managerial employees who were excluded from coverage of the Act. The Board held that the analysts were not managerial employees because their work essentially was an outgrowth of their previous bargaining unit positions; the unit was clarified to include the three analysts. When the Company refused to bargain over terms and conditions of employment for the three workers,[1] the Union filed unfair labor practice charges under

---

1. Since there is no direct appeal from a unit clarification proceeding, the Company's only re-

§§ 8(a)(1) and (5) of the Act. Based on the earlier adjudication of issues in the unit clarification proceeding, the Board granted summary judgment in the unfair labor practice proceeding. The Board ordered the Company to bargain with the Union over the positions; on appeal the Board seeks enforcement of this order.

## II.

At issue are both the factual findings and legal conclusions of the Board. The Company accuses the Board both of mischaracterizing the record concerning the workers' job responsibilities and of drawing the incorrect legal conclusion from the record.

The Board pinpointed five factual bases for its decision; the Company counters that none of these bases is supported by even a scintilla of evidence. Company Br. at 22–23. As enunciated by the Board, the findings are:

(1) The analysts' duties, while allowing for some discretion and independent action, essentially occur within the limits of guidelines set by the Company;

(2) They all perform substantially the same work they performed previously as bargaining unit employees;

(3) The only real changes in their work have been the loss of some clerical duties and an increase in their responsibilities as a result of the elimination of one layer of supervision;

(4) Their job duties still reflect the essentially routine application of criteria established by the Company and by the various regulatory agencies to whom the Company must report; and

(5) The workers' changed wage structure and schedule, and the fact that they now report to a different department superintendent, do not warrant defining them as managerial employees.

Board Br. at 9–10.

In rebuttal, the Company argues that none of the above findings of fact have a reasonable basis or warrant in the record. A close review of the record reveals that, although the Board interpreted and emphasized certain factors in a way fundamentally different from the Company's interpretation, the Board's factual findings clearly are supported by the record. The duties of the data records analysts are much closer to those of technicians than managers; we find no error in the Board's factual findings.

## III.

In reference to the Board's conclusion that data records analysts do not conform to the prevailing legal definitions of managerial employees, we again find no error in the Board's analysis. Although there is no clear-cut definition of "managerial employee," the parties agree that the relevant Supreme Court authority is *NLRB v. Yeshiva University,* 444 U.S. 672, 100 S.Ct. 856, 63 L.Ed.2d 115 (1980), which discusses managerial employees:

> Managerial employees are defined as those who " 'formulate and effectuate management policies by expressing and making operative the decisions of their employer.' " ... These employees are "much higher in the managerial structure" than those explicitly mentioned by Congress, which "regarded [them] as so clearly outside the Act that no specific exclusionary provision was thought necessary." ... Managerial employees must exercise discretion within, or even independently of, established employer policy and must be aligned with management.... Although the Board has established no firm criteria for determining when an employee is so aligned, normally an employee may be excluded as managerial only if he represents management interests by taking or recommending discretionary actions that effectively control or implement employer policy.

*Id.,* 444 U.S. at 682–83, 100 S.Ct. at 862 (citations and footnote omitted).

*Plate Glass Co. v. NLRB,* 313 U.S. 146, 154, 61 S.Ct. 908, 913, 85 L.Ed. 1251 (1941).

course in challenging the determination was to test it in a § 8(a)(5) proceeding. *See Pittsburgh*

The analysts here do not have the authority to make fundamental decisions about whether or how the company will comply with regulations. They can simply monitor the pollution findings, flag violations, and draft possible remedial solutions. They cannot, for example, determine that a certain stack height is necessary and then implement that decision in a given instance. Their duties do not reflect a level of discretionary action or decision making consistent with the Supreme Court's discussion of a managerial role.

In its discussions of managerial employees, the Supreme Court also has legitimized the concern for preventing "divided loyalty" possibilities. *Yeshiva University,* 444 U.S. at 687–88, 100 S.Ct. at 864–65. The Company posits that classifying the analysts as non-managerial would create the potential for "divided loyalty" since the analysts' reports reflect on the quality of mid-management's efforts to conform to regulations. The Company states this concern: "Suffice it to say that judgment decisions required of Data Records Analysts might be 'colored' when made with knowledge that such decisions would be viewed for the purpose of evaluating managerial performance." Company Br. at 20. That a monitoring role could foreseeably have an impact on how a company's management is perceived seems obvious. This does not necessitate classifying any employee in a potentially sensitive or quasi-adversarial monitoring role as a manager.

For the foregoing reasons, we hold that the Board's findings and conclusions are supported by substantial evidence and should be upheld on appeal. *See Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). Accordingly, enforcement of the Board's order of February 17, 1984, is hereby granted.