181 F.2d 515
 86 U.S.App.D.C. 64
 SEABOARD & WESTERN AIRLINES, Inc.
v.
CIVIL AERONAUTICS BOARD.
SEABOARD & WESTERN AIRLINES, Inc.
v.
CIVIL AERONAUTICS BOARD (AMERICAN OVERSEAS AIRLINES, Inc.,
et al., Intervenors).
 Nos. 10086, 10242.
 United States Court of Appeals District of Columbia Circuit.
 Argued Nov. 1, 1949.
Decided Dec. 27, 1949.
Writ of Certiorari Denied May 29, 1950.
 
 See 70 S.Ct. 997.
 [86 U.S.App.D.C. 65] Mr. Hardy K. Maclay, Washington, D.C., with whom Mr. Stanley Gewirtz, Washington, D.C., was on the briefs, for petitioner.
 Mr. William C. Burt, Chief, Rates Division, Bureau of Law, Civil Aeronautics Board, Washington, D.C., with whom Assistant Attorney General Herbert A. Berhson, Messrs. William J. Hickey, Edward Dumbauld, and William D. McFarlane, Special Assistants to the Attorney General, Mr. Emory T. Nunneley, Jr., General Counsel, Civil Aeronautics Board, and Messrs. Warren L. Sharfman and O. D. Ozment, Attorneys, Civil Aeronautics Board, Washington, D.C., were on the briefs, for respondent.
 Mr. Hugh B. Cox, Washington, D.C., with whom Messrs. Henry J. Friendly, New York City, and John K. Mallory, Jr., Washington, D.C., were on the brief, for intervenor Pan American Airways, Inc.
 Messrs. Howard C. Westwood and James H. McGlothlin, Washington, D.C., filed a brief on behalf of intervenor American Overseas Airlines, Inc. Mr. Daniel M. Gribbon, Washington, D.C., also entered an appearance for intervenor American Overseas Airlines, Inc.
 Before EDGERTON, PRETTYMAN and PROCTOR, Circuit Judges.
 PRETTYMAN, Circuit Judge.
 
 
 1
 These are two petitions to review orders of the Civil Aeronautics Board in three cases. The petitions were consolidated for hearing and decision by this court. The orders of the Board denied petitioner intervention in proceedings pending before the Board for the determination of temporary mail pay to three trans-Atlantic air carriers, but granted limited intervention in the two cases involving final mail rates, e.i., the American Overseas Airways, Inc., cases (No. 10242 in this court), 'such intervention to be limited to the final mail rate determination, and then only to such issues as relate to cargo operations and the extent, if any, to which such cargo operations should be underwritten with 'need' mail pay.'
 
 
 2
 The facts in No. 10086 are, in summary outline, as follows: On July 15, 1946, the Board instituted a proceeding to determine the rate of compensation to be paid Transcontinental & Western Air, Inc. (TWA), for the transportation of mail by air on its trans-Atlantic routes. In its order the Board recited that due to the many intricate problems involved, it was probable that substantial time would elapse before a final rate could be established. It pointed out that under the Act[1] the Post Office Department cannot pay for mail service except upon order of the Board. It was, therefore, of opinion that under the conditions affecting trans-Atlantic air carriers at that time the establishment of a temporary rate, as a basis of payment pending determination of a final rate, would best effectuate the purposes of the Act. It found a fair and reasonable temporary rate to be 75 cents per mail ton-mile and issued a rule to show cause why that rate should not be adopted as a temporary rate pending the determination [86 U.S.App.D.C. 66] of a final rate. It directed that further proceedings be in accordance with Section 285.13 of the Economic Regulations.[2] No objection was filed to the proposed temporary rate, and it was adopted October 18, 1946. Subsequently, two increases were made in that rate, on November 12, 1947, and May 25, 1948.
 
 
 3
 On December 8, 1948,[3] the Board issued an order proposing a further increase in the temporary rate and directing TWA to show cause why the proposed new rate should not be fixed. On December 10, 1948, Seaboard & Western filed a petition for leave to intervene in the proceeding and at the same time filed its notice of objections to the order of December 8th. It recited that TWA was a certificated carrier receiving mail pay, that Seaboard & Western was a noncertificated carrier which did not receive mail pay and had not requested authorization to transport mail, and that it (Seaboard & Western) had an application for a certificate pending. It said that since Seaboard & Western was engaged in the transportation of property without mail pay or subsidy of any kind, and since TWA was also engaged in the transportation of property between many of the same areas and points as Seaboard, but with the advantage of mail payments, 'there is a grave danger that the certificated carriers will use such mail payments to subsidize uneconomical property carriage operations, permitting them to lower their rates to the point where Seaboard & Western is forced into an unfair competitive position which would threaten its ability to survive.' It further said that unless it was permitted to intervene, 'there exists a strong possibility that the scheduled airlines, including Transcontinental & Western Air, Inc., will be able to carry property in international air commerce at unrealistic and uneconomical rates and recover the losses sustained through such operations by subsidy payments from the United States Government.' Seaboard concluded that it 'must necessarily be assured that Transcontinental & Western Air, Inc., shall not be permitted to use mail pay grants from the public Treasury as a subsidy for air freight operations conducted on an unrealistic and uneconomical rate structure.' Upon this basis, Seaboard said that it had a substantial interest in the proceeding and that its interest was not adequately represented by existing parties.
 
 
 4
 The Board denied the petition to intervene, without prejudice to Seaboard's right to renew the petition upon the issuance by the Board of a show cause order proposing a final mail rate, and it dismissed the notice of objections filed by Seaboard. The Board said that formal intervention at the time sought by Seaboard would unduly broaden the issues and might seriously delay the temporary rate order to such an extent that the purpose of the temporary rate would be defeated. It said that notice of objections under Section 285.13(c) (1) of its Regulations could not be filed until the petition to intervene had been granted, and it further said that full justice would be done Seaboard if it was allowed to participate in the hearing in accordance with Section 285.6(a) of the Regulations, which provides that any person may appear at a hearing, present evidence, suggest questions, and, with permission, cross-examine.
 
 
 5
 Seaboard asks this court to review this order of the Board, which denied intervention in so far as the proceeding relates to the temporary mail rate and dismissed the objections to the show cause order.
 
 
 6
 [86 U.S.App.D.C. 67] In respect to the other proceedings, which are No. 10242 in this court and which involved American Overseas Airlines, Inc., and Pan American Airways, Inc., the facts are substantially the same as those which we have related concerning Transcontinental & Western, except for variations in the orders entered by the Board. Whereas, in No. 10086, involving only temporary rates, intervention was denied by the Board, in No. 10242 intervention was granted to a limited extent in respect to the final mail rate determinations. The limitation was 'to such issues as relate to cargo operations and the extent, if any, to which such cargo operations should be underwritten with 'need' mail pay.' Moreover, in No. 10242 Seaboard petitioned for review of the temporary rate orders themselves as well as the orders denying intervention.
 
 
 7
 The questions presented are (1) whether this court has jurisdiction over orders denying intervention; (2) whether Seaboard & Western has such an interest in the proceedings before the Board in respect to either the temporary mail rates or the permanent mail rates as to entitle it to be made a party to those proceedings without limitation; and (3) whether temporary mail rate orders are appealable.
 
 
 8
 As we pointed out in Seaboard & Western Airlines, Inc. v. Civil Aeronautics Board,- U.S.App.D.C.- , 181 F.2d 777, 1949, the jurisdiction of this court to review the orders denying Seaboard's intervention depends upon whether those orders dispose of any rights of Seaboard by effectually denying them. We must, therefore, consider Seaboard's rights.
 
 
 9
 Seaboard, as a cargo carrier, is a competitor of the other three carriers in so far as they carry cargo. The statute says that a person having a 'substantial interest' may appeal from an order.[4] It is not disputed that one who may appeal may intervene. The Board's Regulations[5] provide for intervention by a person having 'a substantial interest', and in its brief before us the Board states that it has no quarrel with the view that one who may appeal is entitled to participate in the proceedings below. So the question is whether Seaboard, as a competitor in respect to cargo, has a 'substantial interest'. This is strictly a question of statutory construction. As such, it does not fall within the doctrine of Alabama Power[6] and similar cases, which dealt with common law rights. We think the case at bar is governed by the doctrine of Yankee Network v. Federal Communications Comm'n,[7] Federal Communications Comm'n v. Sanders Radio Station,[8] Alton v. United States,[9] and Pan American Airways Co. v. Civil Aeronautics Board,[10] which hold that a competitor is adversely affected by and has a substantial interest in orders affecting the matter as to which he is a competitor. We do not think that the fact that Seaboard is a non-certificated carrier is material on this point. It is registered pursuant to regulations of the Board, and its type of operation is as legal and proper as is the operation of certificated carriers. Its competitive position as to cargo is real.
 
 
 10
 By the same course of reasoning, it is clear that Seaboard has no substantial interest in the carriage of the mail. It does not carry mail and so is not a competitor of the other carriers in that respect.
 
 
 11
 Seaboard says that it has a substantial interest in the mail proceedings, because it is equipped to protect the public interest, and it invokes the opinion of the Supreme Court in the Sanders Radio Station case, supra. But we think that under this particular statute the presence of the Postmaster General in the proceedings is intended to protect the public interest, and his function should effectually accomplish [86 U.S.App.D.C. 68] that objective. He is the official charged with the responsibility of paying to the carriers, on behalf of the public, compensation for carrying the mail. The statute requires that he place in the record in a mail rate proceeding such pertinent information as he may have, and thus clearly indicates that he must be notified of any such proceeding and must participate, at least to the extent specified in the statute. Moreover, he must secure from the Congress by specific appropriation the funds with which to make these payments. Thus, there is a direct and specific supervision by both a responsible executive officer and the Congress itself, before the payments are made, over the amounts of these payments. We think, therefore, that Seaboard's rights under this statute are premised upon its rights as a competitor and upon no other basis.
 
 
 12
 The difficulty of formulating a conclusion from what seems thus far clear arises because the statute provides[11] that in fixing the mail rate, the Board shall take into consideration, among other factors, 'the need of each such air carrier for compensation for the transportation of mail sufficient to insure the performance of such service, and, together with all other revenue of the air carrier, to enable such air carrier under honest, economical, and efficient management, to maintain and continue the development of air transportation to the extent and of the character and quality required for the commerce of the United States, the Postal Service, and the national defense.' Seaboard says that since the mail pay will be considered with all other revenue of the carriers to reach amounts which will permit development of total operations (mail, passengers and cargo) of the quality required for commerce, its interest in cargo operations is an interest in mail pay. The Board, in effect, agrees with that contention but says that the interest thus established is not in the whole of the mail rate proceedings but is in only those parts of the proceedings which relate to mail-pay-and-cargo-carriage. Its orders, as above quoted, permit intervention by Seaboard in respect 'to such issues as relate to cargo operations and the extent, if any, to which such cargo operations should be underwritten with 'need' mail pay.' We understand that phraseology to mean that Seaboard is permitted participation as an intervenor in all those phases of the final rate proceedings which may relate to the effect of the mail pay upon cargo operations. Thus construed, we think that the orders of the Board granting limited intervention in the American Overseas and Pan American final mail rate proceedings deny none of Seaboard's rights. Intervention in respect to the temporary rates is another matter, which we shall discuss in a moment.
 
 
 13
 Seaboard understandably fears the use by the certificated carriers of mail pay as an offset against uneconomic cargo transportation, which use would create an improper and perhaps devastating competitive advantage over a carrier which, like Seaboard, neither has nor desires any mail pay. But if the mail pay, together with all other revenue, produces a total profit no greater than a reasonable return and 'need' upon the whole operation, it is no greater than the statute allows, and Seaboard's remedies are entirely before the Congress. At the same time, either unreasonable expenditures in cargo operations, or reduced profits from that source, or inadequate rates for that service, offset by the mail pay, would clearly demonstrate that the mail pay was excessive. Any of those possibilities would appear upon a proper examination of figures presented to establish the costs, profit and need of a carrier. A carrier is entitled, under the statute, to reasonable return plus 'need', measured by economical management, but to no more. Any excess usable to offset uneconomical management or operation is not permitted. Seaboard is, under the Board's orders, to be in the final rate cases to an extent which will permit it to demonstrate by evidence or by cross examination the presence of any such excess.
 
 
 14
 Upon all the foregoing considerations, it appears that Seaboard has no rights or interest which entitle it to intervention beyond [86 U.S.App.D.C. 69] the extent to which the Board has permitted it.
 
 
 15
 We hold that since Seaboard had a substantial interest in the proceedings it was entitled to intervene for the protection of that interest. For that reason, this court had jurisdiction, upon Seaboard's petition, to review the orders (Nos. E-2730 and E-2733) granting only limited intervention in the cases involved in No. 10242, to insure that they did not deny any rights of the petitioner. Upon that review, we hold those orders to be proper and valid.
 
 
 16
 We think that the temporary rate orders, sought to be reviewed in No. 10242 (Orders Nos. E-2775 and E-2776), are not reviewable. The Board, in its show cause orders relating to the final mail pay rates (Orders Nos. E-2728 and E-2731), clearly contemplates that the final rates will operate retroactively over the entire period during which the temporary rates are in effect. Thus, any excess of the temporary rates over rates finally fixed as proper will be recoverable either by credit or by rebate. Upon that promise, we think the temporary rate orders are not final and so are not reviewable by the courts. For the same reason, we think that the order (No. E-2297) denying intervention in the temporary mail rate proceeding in No. 10086 was not finally dispositive of any of the rights of Seaboard and, therefore, was not reviewable.
 
 
 17
 We have before us in these cases petitions to review five orders. The petition to review the order in No. 10086 is dismissed. The amended petition to review in No. 10242 is dismissed, in so far as it seeks review of the two orders fixing temporary mail rates and also in so far as it seeks review of the denial of intervention in the temporary mail rate proceedings. The orders in No. 10242 relating to intervention are affirmed in so far as they relate to intervention in the final mail pay proceedings.
 
 
 18
 No. 10086 dismissed; No. 10242 affirmed in part and dismissed in part.
 
 
 
 [1]
 Sec. 406(a) of the Civil Aeronautics Act of 1938, 52 Stat. 998, as amended, 49 U.S.C.A. § 486(a)
 
 
 [2]
 According to the printed Joint Appendix, the Board's order said 'section 285.11 of the Economic Regulations,' but it must have meant Section 285.13. Title 14 of the Code of Federal Regulations relates to 'Civil Aviation'. Part 285, which is in subchapter B of Chapter I, is entitled 'Rules of Practice'. Section 285.11 relates to 'Petition for rehearing, reargument, or reconsideration'. Section 285.13 is entitled 'Procedure in rate proceedings'. The Board apparently meant to refer to this latter section
 
 
 [3]
 The order as printed in the Joint Appendix bears neither date nor number. The index to the Joint Appendix refers to it as dated December 8, 1948. The petition for leave to intervene refers to it as dated December 7, 1048, and served December 8, 1948. The Board, in its brief, refers to it as issued December 8th
 
 
 [4]
 Sec. 1006(a) of the Act, 52 Stat. 1024 (1938), as amended, 49 U.S.C.A. § 646(a)
 
 
 [5]
 Sec. 285.6(b)(1) of the Rules of Practice
 
 
 [6]
 Alabama Power Co. v. Ickes, 1938, 302 U.S. 464, 58 S.Ct. 300, 82 L.Ed. 374
 
 
 [7]
 1939, 71 App.D.C. 11, 107 F.2d 212
 
 
 [8]
 1940, 309 U.S. 470, 60 S.Ct. 693, 84 L.Ed. 869
 
 
 [9]
 1942, 315 U.S. 15, 62 S.Ct. 432, 86 L.Ed. 586
 
 
 [10]
 2 Cir., 1941, 121 F.2d 810
 
 
 [11]
 Sec. 406(b) of the Act, 52 Stat. 998 (1938), as amended, 49 U.S.C.A. § 486(b)