306 F.2d 753
 NATIONAL AIRLINES, INC., Petitioner,
v.
CIVIL AERONAUTICS BOARD, Respondent,
Northeast Airlines, Inc., Hughes Tool Company, Northeast Airlines Master Executive Council, ALPA, International Association of Machinists, Intervenors.
EASTERN AIR LINES, INC., Petitioner,
v.
CIVIL AERONAUTICS BOARD, Respondent,
Northeast Airlines, Inc., Hughes Tool Company, Northeast Airlines Master Executive Council, ALPA, International Association of Machinists, Intervenors.
 No. 16748.
 No. 16749.
 United States Court of Appeals District of Columbia Circuit.
 Argued April 9, 1962.
 Decided May 24, 1962.
 
 Mr. John W. Cross, Washington, D. C., with whom Messrs. Andrew T. A. Macdonald and Jerome A. Barron, Washington, D. C., were on the brief, for petitioner in No. 16,748.
 Mr. James H. Bratton, Jr., Atlanta, Ga., of the bar of the Supreme Court of Georgia, pro hac vice, by special leave of court, with whom Messrs. E. Smythe Gambrell and Harold L. Russell, Atlanta, Ga., were on the brief, for petitioner in No. 16,749.
 Mr. O. D. Ozment, Associate Gen. Counsel, Litigation and Research, Civil Aeronautics Board, with whom Messrs. John H. Wanner, Gen. Counsel, Joseph B. Goldman, Deputy Gen. Counsel, William L. Howard, Jr., and Mrs. Yvonne H. Behart, Attys., Civil Aeronautics Board, and Messrs. Richard A. Solomon and Irwin A. Seibel, Attys., Dept. of Justice, were on the brief, for respondent.
 Mr. Lloyd N. Cutler, Washington, D. C., for intervenor Northeast Airlines, Inc. Mr. Ezekiel G. Stoddard, Washington, D. C., was on the brief for intervenor Northeast Airlines, Inc. Mr. Samuel A. Stern, Washington, D. C., also entered an appearance for intervenor Northeast Airlines, Inc.
 Mr. Paul A. Porter, Washington, D. C., with whom Mr. G. Duane Vieth, Washington, D. C., was on the brief, for intervenor Hughes Tool Co.
 Mr. James L. Highsaw, Jr., Washington, D. C., entered an appearance for intervenors Northeast Airlines Master Executive Council, Airline Pilots Assn., International, and International Assn. of Machinists.
 Before BAZELON, FAHY and BASTIAN, Circuit Judges.
 BASTIAN, Circuit Judge.
 
 
 1
 Petitioners, National Airlines, Inc. and Eastern Air Lines, Inc., seek review of certain orders of the respondent, Civil Aeronautics Board, issued in a proceeding known as "Toolco-Northeast Control Case, Docket 11621." The orders appealed from are numbered E-17742 and E-17811. Order No. E-17742 set down for hearing the question whether the Board should grant interim approval to allow emergency financial assistance by Hughes Tool Company [Toolco] to Northeast Airlines, Inc. [Northeast], intervenors. Order No. 17811 authorized Northeast to negotiate with and obtain from Toolco, and Toolco to render financial assistance for interim relief purposes.
 
 
 2
 In Docket 11620 the Board instituted the "Toolco-Northeast Control Case" to determine whether Toolco or any of its affiliates had, by reason of previous loan or other transactions, acquired control of Northeast.
 
 
 3
 On October 30, 1961, Northeast and Toolco requested, by letter received by the Board on November 1, 1961, that the Board "take appropriate action so as to permit Northeast to negotiate and obtain from Toolco funds urgently and immediately required by Northeast." It was alleged in effect that Northeast was on the brink of financial collapse, that it must have immediate financial assistance in order to survive, and that the only source of emergency funds was Toolco. It was stated in the letter that by the Board's Order No. E-12925, issued on August 29, 1958, in Docket 8235, Howard R. Hughes (controlling stockholder of Toolco) had been directed to cease and desist from acquiring control, in any manner whatsoever, of any air carrier, other common carrier, or any person engaged in any phase of aeronautics otherwise than as an air carrier, unless prior Board approval was obtained. The letter continued:
 
 
 4
 "Upon the facts and circumstances presented above, the parties request that the Board take such action as it may deem appropriate so as to permit Toolco to provide Northeast with funds for the purposes and in the manner indicated herein without subjecting Toolco or Northeast to any penalties or other action prejudicial to their respective rights or interests and without prejudice, by reason of the so-called Sherman Doctrine or otherwise, to any determination by the Board in connection with an application for the acquisition of a controlling interest in Northeast by Toolco from Atlas."
 
 
 5
 National and Eastern filed answers to the "Joint Request of Northeast and Toolco, Dated October 30, 1961, for Extraordinary Relief."
 
 
 6
 On November 8, 1961, by its Order No. E-17675, the Board ordered, among other things:
 
 
 7
 "1. That Toolco and Northeast shall file with the Board, within ten days of the date of service hereof, a complete report of all agreements, understandings, and transactions between them, and of all obligations incurred by Hughes or Toolco on behalf of Northeast or Atlas, which have not heretofore been reported. This report shall include a detailed description of each such occurrence, together with the amount of each such transaction;
 
 
 8
 "2. That Northeast and Toolco shall continue to file such reports, as required by Order E-15532;
 
 
 9
 "3. That any agreement for the acquisition by Toolco of the interest of Atlas in Northeast shall be reduced to writing and filed with the Board within 15 days of the date of service of this order;
 
 
 10
 "4. That upon the filing of an application for approval of such agreement, the matter shall proceed to an expedited hearing;"
 
 
 11
 Board Members Gurney and Gillilland dissented.
 
 
 12
 On November 15, 1961, Northeast filed a petition for "clarification, interpretation and/or modification of Order No. E-17675" so as to authorize or permit the carrier to obtain from Toolco emergency financial assistance in amounts limited to amounts essential for the continuation of its operations until December 31, 1961. The petition stated that such emergency financial assistance did not involve any acquisition or consolidation of control within the meaning of the Board's Order No. E-12925 or of § 408 of the Federal Aviation Act of 1958, 72 Stat. 737, 49 U.S.C.A. §§ 1301-1542. That petition was likewise opposed by National and Eastern. Their answers claimed, among other things, that it was not in the public interest that the relief requested be granted, that the Board was without power to grant Northeast's request without a full evidentiary hearing, and that such full evidentiary hearing was required under § 408. The pertinent parts of that section appear in note 2 infra.
 
 
 13
 By its Order No. E-17742, adopted November 17, 1961, the Board reviewed the financial plight of Northeast and stated that under the circumstances it was "manifest that prompt action on the prayers for relief is required," and that no reason existed why the Board should not proceed with an immediate hearing under § 408 to determine whether the proposed emergency financial assistance by Toolco would be adverse to the public interest. The Board further stated that under normal circumstances it would proceed by way of a conventional evidentiary hearing but that such a hearing here would frustrate the very transactions for which approval was sought and that, therefore, it was incumbent upon the Board to provide an alternate procedure. The Board stated that it had decided to narrow the scope of its inquiry to the question of interim relief and to make use of a summary hearing procedure to resolve that question. Accordingly, the Board ordered:
 
 
 14
 "In view of all the foregoing, It Is Ordered:
 
 
 15
 "1. That on November 29, 1961, at 10:00 a.m., the Board will receive oral argument on the question whether interim approval under Section 408 of the Act should be granted to permit the emergency financial assistance specified in the aforementioned petition of Northeast Airlines;
 
 
 16
 "2. That Eastern Air Lines, Inc., National Air Lines, Inc., and Hughes Tool Company be and hereby are made parties to this proceeding;
 
 
 17
 "3. That on or before November 24, 1961, the parties herein specified may file briefs and supporting affidavits with regard to the question posed in paragraph 1 of this order; and counter affidavits may be filed on or before November 27, 1961; and
 
 
 18
 "4. That except to the extent granted above, the aforementioned petition of Northeast be and hereby is denied."
 
 
 19
 After the receipt of briefs, affidavits, counter-affidavits, and oral argument, the Board on December 8, 1961, entered its Order No. E-17811. In that order it made, among others, the following findings:
 
 
 20
 "* * * [W]e find that Northeast is in such a critical financial condition that it is in need of emergency financial assistance; that without such assistance, it is very likely that the carrier will be forced into bankruptcy; and that such a financial collapse will have serious adverse effects on the public interest — curtailing or eliminating essential air services, particularly in New England; jeopardizing the employment of a large number of employees of Northeast; impairing the financial reputation of airlines generally; causing irreparable injury to creditors and stockholders; probably subjecting the Federal Treasury to claims for millions of dollars of subsidy to support needed air services in New England. Measured against these developments, we are unable to find any sound reason for withholding from Northeast the opportunity for obtaining emergency assistance from Toolco. Whether Toolco will in fact advance the needed funds is not clear on the record before us. All we decide is that the advancement of such funds, pending ultimate disposition of a Section 408 proceeding, is not adverse to the public interest and meets the approval of the Board."
 
 
 21
 Accordingly, the Board, by a majority vote, Members Gurney and Gillilland again dissenting, on December 8, 1961 (effective December 13, 1961), granted to Northeast leave to negotiate with and obtain assistance from Toolco, and Toolco was granted permission to render assistance to Northeast. The Board ordered:
 
 
 22
 "1. That pending completion of the proceeding instituted in this docket Northeast Airlines, Inc., be and it hereby is authorized to negotiate with and obtain from Hughes Tool Company, and Hughes Tool Company is hereby authorized to render financial assistance to Northeast;
 
 
 23
 "2. That the approvals granted herein are confined exclusively to the emergency financial assistance specified in paragraph 1 above; are solely for interim relief purposes; and are without prejudice to the full exercise by the Board of its jurisdiction under Section 408 to determine whether Hughes Tool Company or Howard Hughes has or will acquire control of Northeast, and whether such control is in the public interest;
 
 
 24
 "3. That the proceeding instituted in this docket to determine whether Hughes Tool Company or Howard Hughes has acquired control of Northeast Airlines, Inc., and whether any such control should be approved by the Board under Section 408 of the Act, be set down for hearing before an Examiner of the Board on an expedited basis;"
 
 
 25
 This petition by National and Eastern for review followed. This court, by a majority vote, denied a stay of the order in the case now before us for final determination.
 
 
 26
 At the outset, intervenors urge that petitioners are without standing and that the order appealed from lacks finality. We disagree with both of these propositions. We think it clear that petitioners, having been made parties to the proceedings before the Board, have standing in this case. See Chicago Junction Case, 264 U.S. 258, 44 S.Ct. 317, 68 L.Ed. 667 (1924); Seaboard & Western Air Lines v. Civil Aeronautics Bd., 86 U.S.App.D.C. 64, 181 F.2d 515 (1949), cert. denied, 339 U.S. 963, 70 S.Ct. 997, 94 L.Ed. 1372 (1950). In the latter case, discussing the matter of standing, we said:
 
 
 27
 "We think the case at bar is governed by the doctrine of Yankee Network v. Federal Communications Comm'n [71 App.D.C. 11, 107 F.2d 212 (1939)], Federal Communications Comm'n v. Sanders Radio Station [309 U.S. 470, 60 S.Ct. 693, 84 L.Ed. 869 (1940)], Alton R. [Co.] v. United States [315 U.S. 15, 62 S.Ct. 432, 86 L.Ed. 586 (1942)], and Pan American Airways Co. v. Civil Aeronautics Board [121 F.2d 810 (2d Cir. 1941)], which hold that a competitor is adversely affected by and has a substantial interest in orders affecting the matter as to which he is a competitor." 86 U.S.App.D.C. at 67, 181 F.2d at 518.
 
 
 28
 While the issue of finality is not so clear, we think the Board's orders have sufficient finality to justify an appeal. Chicago & Southern Air Lines v. Waterman Corp., 333 U.S. 103, 68 S.Ct. 431, 92 L.Ed. 568 (1948). Isbrandtsen Co. v. United States, 93 U.S.App.D.C. 293, 211 F.2d 51 (1954), cert. denied, 347 U.S. 990, 74 S.Ct. 852, 98 L.Ed. 1124, is not to the contrary.
 
 
 29
 Turning then to the question whether the Board had power to issue the orders complained of without a full evidentiary hearing, it is obvious that the question is a close one. However, we believe that § 204(a)[1] of the Act, combined with § 408(a),[2] is sufficient to give the Board authority in exceptional cases (and this is an exceptional case) to issue an emergency order, particularly as it is clear from the record before us that the public interest requires that Northeast be kept in operation and that the alleged harm to National is only that which arises from competition. The Board has safeguarded the rights of petitioners in the proceeding under Docket 11620, as evidenced by ¶ 2 of Order No. E-17811, supra. See American Trucking Assn's v. United States, 344 U.S. 298, 73 S.Ct. 307, 97 L.Ed. 337 (1953); American Broadcasting Co. v. Federal Communications Comm'n, 89 U.S.App.D.C. 298, 191 F.2d 492 (1951).
 
 
 30
 We agree with the Board that its findings are adequate and supported by the record before it, and that it was not required to resolve the disputed issue of control as a prerequisite to the issuance of the orders complained of. It seems clear that the Board is not required to use the same procedure for interim relief, if an emergency exists, as is required for final action.
 
 
 31
 At the same time, we emphasize that such summary procedure should be exercised only when the relief is of an emergent nature and so seriously affects the public interest as is the case here. The court would scrutinize carefully any order entered without full compliance with § 408, to determine whether there is sufficient emergency to justify the procedure in reliance upon § 204.
 
 
 32
 We think further that the Board should, as it has agreed to do, proceed promptly to a final determination of the proceeding in Docket 11620.
 
 
 33
 We have examined all of the contentions raised by petitioners and find them insufficient to justify reversal. Accordingly, the Board's orders are affirmed.
 
 
 34
 So ordered.
 
 
 
 Notes:
 
 
 [1]
 § 204 [72 Stat. 743, 49 U.S.C.A. 1324]. "(a) The Board is empowered to perform such acts, to conduct such investigations, to issue and amend such orders, and to make and amend such general or special rules, regulations, and procedure, pursuant to and consistent with the provisions of this chapter, as it shall deem necessary to carry out the provisions of, and to exercise and perform its powers and duties under, this chapter."
 
 
 [2]
 § 408 [72 Stat. 767, 49 U.S.C.A. 1378]. "(a) It shall be unlawful unless approved by order of the Board as provided in this section —
 "(1) For two or more air carriers, or for any air carrier and any other common carrier or any person engaged in any other phase of aeronautics, to consolidate or merge their properties, or any part thereof, into one person for the ownership, management, or operation of the properties theretofore in separate ownerships;
 "(2) For any air carrier, any person controlling an air carrier, any other common carrier, or any person engaged in any other phase of aeronautics, to purchase, lease, or contract to operate the properties, or any substantial part thereof, of any air carrier;
 "(3) For any air carrier or person controlling an air carrier to purchase, lease or contract to operate the properties, or any substantial part thereof, of any person engaged in any phase of aeronautics otherwise than as an air carrier;
 "(4) For any foreign air carrier or person controlling a foreign air carrier to acquire control, in any manner whatsover, of any citizen of the United States engaged in any phase of aeronautics;
 "(5) For any air carrier or person controlling an air carrier, any other common carrier, or any person engaged in any other phase of aeronautics, to acquire control of any air carrier in any manner whatsoever;
 "(6) For any air carrier or person controlling an air carrier to acquire control, in any manner whatsoever, of any person engaged in any phase of aeronautics otherwise than as an air carrier; or
 "(7) For any person to continue to maintain any relationship established in violation of any of the foregoing subdivisions of this subsection."