NATIONAL AIRLINES, INC., Petitioner,

v.

CIVIL AERONAUTICS BOARD, Respondent,

Northeast Airlines, Inc., Atlas Corporation, Intervenors.

No. 17537.

United States Court of Appeals District of Columbia Circuit.

Argued May 16, 1963.

Decided July 3, 1963.

381

Mr. Lloyd N. Cutler, Washington, D. C., with whom Messrs. Ezekiel G. Stoddard, Daniel K. Mayers and Arnold M. Lerman, Washington, D. C., were on the brief, for intervenor, Northeast Airlines, Inc.

Mr. John C. Meleney, New York City, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of court, with whom Mr. Arnold M. Ler-

man, Washington, D. C., was on the brief, for intervenor, Atlas Corp.

Mr. Andrew T. A. Macdonald, Washington, D. C., with whom Mr. John W. Cross, Washington, D. C., was on the brief, for petitioner.

Mr. O. D. Ozment, Assoc. Gen. Counsel, Litigation and Legislation, Civil Aeronautics Bd., with whom Messrs. John H. Wanner, Gen. Counsel, Joseph B. Goldman, Deputy Gen. Counsel, Robert L. Toomey, Atty., Civil Aeronautics Bd. and Lionel Kestenbaum, Atty, Dept. of Justice, were on the brief, for respondent.

Before BAZELON, Chief Judge, and FAHY and BASTIAN, Circuit Judges.

BASTIAN, Circuit Judge.

This proceeding was before us on a prior occasion.[1] The orders there appealed from were Board's Orders No. E–17742 and No. E–17811. Order No. E–17742 set down for hearing the question whether or not the Board should give interim approval to allow emergency financial assistance to Northeast Airlines, Inc. [Northeast] by Hughes Tool Company [Toolco]. Order No. E–17811 authorized Northeast to negotiate with and obtain from Toolco, and Toolco to render, financial assistance for interim relief purposes. We affirmed both orders.

In Order No. E–17811 the Board provided, among other things:

"2. That the approvals granted herein are confined exclusively to the emergency financial assistance specified in paragraph 1 above; are solely for interim relief purposes; and are without prejudice to the full exercise by the Board of its jurisdiction under Section 408 to determine whether Hughes Tool Company or Howard Hughes has or will acquire control of Northeast, and whether such control is in the public interest;

"3. That the proceeding instituted in this docket to determine

I. National Airlines v. Civil Aeronautics Board, 113 U.S.App.D.C. 146, 306 F.2d 753 (1962)·

whether Hughes Tool Company or Howard Hughes has acquired control of Northeast Airlines, Inc., and whether any such control should be approved by the Board under Section 408 of the Act, be set down for hearing before an Examiner of the Board on an expedited basis;"

Some factual background of the controversy here under consideration is necessary to an understanding of the present case.

Toolco is wholly owned by Howard R. Hughes. With Board approval Toolco owns 78% of the stock of Trans World Airlines [TWA]; however, by Board Order No. E–16195, dated December 29, 1960, this stock was placed in a voting trust, which is still in effect and prevents control of TWA by Toolco.

Hughes also owns 11% of the stock of Atlas Corporation [Atlas], which owned approximately 56% of the stock of Northeast. As a result of a consent agreement with the Board, Hughes' Atlas stock has been placed in an irrevocable voting trust and Hughes has been directed to cease and desist from acquiring control of any air carrier without Board approval. [Order No. E–12925, dated August 29, 1958.] The Hughes-TWA-Atlas-Northeast Airlines Possible Common Control Case, 27 C.A.B. 155.

Toolco having rendered certain financial assistance to Northeast,[2] complaint was made by National Airlines, Inc. [petitioner] that Hughes was violating the cease and desist order and § 408 of the Federal Aviation Act of 1958, 72 Stat. 767, 49 U.S.C. § 1378.[3] Eastern Airlines intervened and was made a party to the proceeding. The Board thereupon entered its Order No. E–15532, dated July 12, 1960, providing, among other

things, for investigation of the question whether Hughes had acquired control of Northeast. Subsequently, Northeast, Toolco and Atlas filed a joint application with the Board for approval of the acquisition by Toolco of Atlas' controlling interest in Northeast pursuant to a purchase agreement among those parties. The application for approval of the proposed purchase was consolidated in Docket 11620.

The main case [Docket 11620] was expedited, as promised by the Board, and on May 8, 1962, the examiner reached his decision, in which he concluded that controlling interest of Northeast by Toolco would not be adverse to the public interest, that it would not create a monopoly, and that it would not restrain competition or jeopardize another carrier not a party to that acquisition. He concluded that the financial support rendered by Toolco to Northeast would inure to the public interest, and that acquisition by Toolco of Atlas' interest in Northeast should be approved, subject to certain conditions not necessary to be set out here. The examiner further found that the transactions between Toolco and Northeast above referred to did not effect an acquisition of control by Toolco and that the record does not disclose that Toolco attempted to manage or control Northeast operations, nor that it participated in any of the major decisions made by Northeast. The examiner further stated:

"Assuming * * * that Toolco did acquire the power to control Northeast at some period during the last two years, through its creditor relationship or its inclination to finance Northeast, that control should be approved. Toolco has never exercised or attempted to exercise con-

---

2. Included in this assistance, and probably most important, was the loan of $9,500,-000 by Toolco to Northeast in order to provide working capital and for use in connection with a program to commence operations with Convair 880 jet aircraft.

3. 49 U.S.C. § 1378: "(a) It shall be unlawful unless approved by order of the

Board as provided in this section— * * * (5) For any air carrier or person controlling an air carrier, any other common carrier, or any person engaged in any other phase of aeronautics, to acquire control of any air carrier in any manner whatsoever;"

trol of Northeast. To disapprove Toolco's control of Northeast because Northeast's financial condition was so precarious that legally it was controlled by its hopes for assistance from a subordinated creditor, would be an over-technical application of the law and would serve no useful purpose.

"The approval of the acquisition of Northeast by Toolco will increase competition rather than restrain it. If the acquisition is not approved, Northeast will fail and competition will be eliminated from all of its trunkline routes. On the other hand, the continuance of Northeast's operations will maintain competition on Northeast's trunkline routes in New England and on the Florida route until the Renewal Case [4] is decided."

Application was made to the Board for review of the examiner's decision; briefs were filed; and oral argument had. The Board agreed with the examiner in the main, and approved the proposed purchase subject to certain conditions not relevant here. This petition by National for review followed.[5]

The ground most vigorously urged for reversal of the Board's order is that petitioner was denied its right of a full evidentiary hearing under § 408 of the Act because the Board and the examiner refused to receive evidence of managerial efficiency and economy while Toolco was in charge of TWA, thus eliminating the crucial issue of the effect of the proposed acquisition of control on the efficiency and economy of Northeast.

It is further contended that the Board erred in applying a presumption that the public interest required continuation of Northeast's services while refusing to consider whether these services would be efficient and economical under Toolco's control, and in refusing to permit rebuttal of the presumption.

It is also contended that the Board erred in concluding that, because of Northeast's financial situation, there existed no practical alternative to approval of control by Toolco where the evidence of record established that Toolco was authorized and financially able to provide emergency assistance.

■ The refusal of the Board and the examiner to permit an investigation into the management of TWA while Toolco was in charge did not, in our opinion, constitute error. Courts have recognized that administrative agencies have certain limited discretion to decide whether to permit the introduction of evidence in a hearing. See, e. g., Pittsburgh Plate Glass Co. v. Nat'l Labor Relations Board, 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251 (1941). Such discretion, of course, is circumscribed, as Mr. Justice Stone stated in his dissent:

"One of the most important safeguards of the rights of litigants * * * in proceedings before an administrative agency vested with discretion, is that it cannot rightly exclude from consideration facts and circumstances relevant to its inquiry which upon due consideration may be of persuasive weight in the exercise of its discretion." 313 U.S. at 177, 61 S.Ct. at 923.

This court, on occasion, has admonished agencies for being arbitrary in excluding evidence when there was no reason for its exclusion. As we stated in Clarksburg Pub. Co. v. Federal Communications Comm., 96 U.S.App.D.C. 211, 215, 225 F.2d 511, 515 (1955):

"The statute contemplates that, in appropriate cases, the Commission's inquiry will extend beyond matters alleged in the protest in order to reach any issue which may be relevant in determining the legality of the challenged grant. Clearly, then, the inquiry cannot be limited to the facts alleged in the protest where the Commission has reason to

4. New York-Florida Renewal Case, Docket 12285.

5. Eastern Airlines has not filed a petition for review.

believe, either from the protest or its own files, that a full evidentiary hearing may develop other relevant information not in the possession of the protestant."

Further, in City of Pittsburgh v. Federal Power Commission, 99 U.S.App.D.C. 113, 237 F.2d 741 (1956), we set aside the order and remanded the case to the Commission because it had refused to consider "the needs of tomorrow." We held that where evidence of a future need is relevant in a determination of present public convenience and necessity, the agency must consider evidence on that point.

■ The approval here of the Board's ruling on admissibility does not derogate from the principles set down in Clarksburg and City of Pittsburgh. Here the advantage in expanding the scope of the hearing to include consideration of Toolco's management of TWA is far outweighed by the disadvantage of such a protracted investigation. In the first place, the examiner did not eliminate much testimony bearing on Toolco's operation of TWA. The record is replete with evidence of the willingness of the examiner to inquire into the character of the management of TWA by Toolco. He permitted testimony whether there was improper dealing between TWA and Toolco, whether there was conflict of interest between them, as well as other matters having to do with the good faith of Toolco in its dealings with TWA. Furthermore, he granted the request of the Bureau of Economic Regulations, concurred in by petitioner, to investigate the possibility of illegal acts, specifically whether Toolco's acquisition of control of Northeast without prior approval of the Board was in violation of § 408 and of the outstanding order to cease and desist.

What the Board did not permit was the admission of details of how Toolco managed TWA, from either the administrative or the financial standpoint. In its opinion affirming the examiner, the Board stated that to require the examiner to pursue the question of efficiency and economy of Toolco's management of TWA would kill Northeast just as effectively (by protracting the proceeding) as would disapproval of the acquisition, and that exclusion of this evidence was not in any way prejudicial to Eastern or National.

■ We do not read § 408 to require in every case the admission of all of the evidence which the parties may care to submit. It is true, as petitioner points out, that the evidence it sought to adduce is related to one of the criteria of public convenience and necessity set out in § 102 of the Act. This circumstance leads us to scrutinize the Board's action in this regard very closely, but it does not alter our conclusion about a § 408 hearing. The Board does have some discretion to exclude proffered evidence, even when it relates to § 102 criteria, and we will review the exercise of that discretion in terms of the situation existing before the Board.[6] In view of the magnitude of the investigation desired by petitioner, the time it would consume, and its minimal probative value in the present proceeding, and considering the exigent and speedy aid required by Northeast, we believe that approval of the ruling of the examiner was in the area of the Board's permissible discretion and that petitioner was not denied a full hearing under § 408. In affirming the action of the examiner in regard to the exclusion of evidence, the Board adopted this language:

"The Bureau makes the specious argument, that because the Examiner refused to receive evidence on the economy and efficiency of the Toolco management of TWA, that it was thereby prevented from introducing evidence with reference to the honesty or lawfulness of Toolco's management. The Bureau was informed that it could go thoroughly into such questions and that the investigation or examination with ref-

6. Northwest Airlines v. C. A. B., 112 U.S. App.D.C. 384, 387, 303 F.2d 395, 398 (1962).

erence to those matters would not be limited or restricted because the development of such facts might also be relevant to the question whether Toolco's management was economical and efficient. It was the deliberate decision of the Bureau not to investigate or present facts, if such were available, with reference to the honesty or unlawfulness of Toolco's operations. The rulings of the Examiner did not prevent a full investigation of this phase of the proceeding.

"It is, of course, impossible to determine whether additional witnesses or existing documents would contribute further information with reference to the lawfulness, propriety, and honesty of Toolco in its relationships with TWA, Northeast or otherwise, but there is nothing in this record to indicate such witnesses or material are available." [7]

■ The real issue before the Board was whether the public interest would be better served by the acquisition of Northeast by Toolco, which is willing and has agreed to expend large sums of money to maintain Northeast as an operating airline, than by the bankruptcy of Northeast. The Board set forth the findings and conclusions of the examiner as follows:

"As the basis for his conclusions, the Examiner relied on a number of findings. Without attempting to set them forth in detail, in essence, they reduce themselves to this. Northeast is on the verge of bankruptcy and unless it obtains outside help, it will soon be forced to cease operations. If the carrier is to be maintained in being and its services continued, there are no feasible alternatives to approval of the control applied for. Other sources of financial assistance have been explored by Northeast's management over the past two years to no avail. Even if

subsidy mail pay were available, it would not suffice to maintain Northeast as a viable company, and a reorganization under Chapter X of the Bankruptcy Act holds no promise of recovery. Toolco offers the only hope for survival of the company. It must be presumed that Northeast's continued operations are in the public interest. Allowing Northeast to die would not only deprive the traveling public, including numerous communities that have no other air service and some that even have no rail passenger service, of the carrier's service, but would have the further effect of depriving 2,900 company employees of their livelihood, of virtually wiping out unsecured creditors of the company holding debts which total over $8,-000,000, and of completely eliminating the interests of the company's shareholders.

"The Examiner also concluded that Toolco is financially able to render financial assistance to Northeast in an amount of at least $20,-000,000; that although Toolco has not proposed or promised any specific sum of money or presented specific plans for rehabilitation of Northeast, the evidence of record indicates that Toolco intends to keep Northeast operating in the immediate future and hopes to rehabilitate it. He further considered the detailed arguments of the objecting parties against approval of the acquisition and rejected them, but in so doing further found in each instance that even if the allegations had been established the over-all public interest, on balance, would still dictate approval."

The Board, as did the examiner, concluded that "the preservation of Northeast as an operating entity" was in the public interest, and we find no basis for disturbing that judgment.

---

**7.** We intimate no opinion on whether the proffered evidence would be relevant in the presently pending Renewal Case, supra note 4.

National also argues that there was an alternative to the acquisition of the airline by Toolco, namely, that there was evidence that Toolco was authorized and financially able to provide further financial assistance. We think the evidence is clear that Toolco was unwilling to advance the further sum required ($20,-000,000) without obtaining control of Northeast. Certainly no other alternative was presented to the Board. The Board pointed out that in the United-Capital Merger Case they had been faced with the problem of an established carrier in *extremis* and with the argument that they should explore various alternatives before granting approval. The Board rejected those arguments in that case and was upheld by this court.[8] On the facts before it, the Board here concluded, as it did in the Merger Case, that the public interest in maintaining Northeast and in avoiding the serious consequences of its collapse was paramount to the concern that Northeast's operation by Toolco might suffer some inefficiency, assuming that to be a reasonable expectation based upon TWA's history, as National sought to show. We think the Board's reasoning in the Merger Case is applicable here.

It is contended by National that both the examiner and the Board applied a presumption that the public interest requires the continuation of service, particularly in the New York-Florida route, in which both National and Eastern are competitors of Northeast. There is pending before the Board the matter of Northeast's authority to serve the Florida market.[9] That proceeding was treated by the Board as separate and distinct from the instant case, and we find no error in the Board's determination in that regard.[10] At the hearing in the present case, the examiner ruled that the issues of public convenience and necessity with respect to Northeast's continued operations in the Florida market should be determined in the Renewal Case and not in the present proceeding. We are advised that the taking of testimony in the matter of the continuation of Northeast's authorization to serve the Florida market has been completed and that the initial report of the examiner has been filed. Nothing in the case before us will have any bearing on the final determination of the Renewal Case.

Finally, we conclude that the record as a whole contains evidence sufficient in all respects to support the Board's decision.

It follows that the action of the Board must be and is

Affirmed.

---

8. Northwest Airlines, Inc. v. C. A. B., 112 U.S.App.D.C. 384, 303 F.2d 395 (1962).

9. Northeast's temporary certificate to operate south of New York has expired, but its operations are continuing pending final determination on its application for renewal.

10. See Northwest Airlines, Inc. v. C. A. B., supra note 8.